UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RIVIANA FOODS, INC, )<br>)<br>    Plaintiff, )<br>) No. 18-cv-06550<br>  v. )<br>) Judge Martha M. Pacold<br>JACOBSON WAREHOUSE COMPANY, )<br>INC. d/b/a XPO LOGISTICS SUPPLY )<br>CHAIN as Successor to ARNOLD )<br>LOGISTICS, LLC )<br>)<br>    Defendant/Third-Party )<br>    Plaintiff. )<br>)<br>  v. )<br>)<br>EXETER 25810 S. RIDGELAND, LLC, )<br>)<br>    Third-Party Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Riviana Foods, Inc. filed a complaint against defendant Jacobson Warehouse Company, Inc. d/b/a XPO Logistics Supply Chain ("XPO"),[1] alleging claims arising from a warehouse fire. XPO moves to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons given below, the motion is granted in part and denied in part.

**BACKGROUND**

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In considering a Rule 12(b)(6) motion, "[t]he complaint's well-pleaded factual allegations, though not its legal conclusions, are assumed to be true." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013). The court considers "the complaint itself, . . .

---

[1] XPO clarifies in the motion to dismiss that "[t]he Complaint mistakenly identifies the defendant as 'Jacobson Warehouse Inc.' The correct name of the defendant is 'Jacobson Warehouse Company, Inc.' d/b/a XPO Logistics Supply Chain." (Dkt. 23 at 1. n.1.)

documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," as well as "additional facts set forth in [plaintiff's] . . . brief . . . , so long as those facts are consistent with the pleadings." *Id.* at 1019–20 (citations and internal quotation marks omitted). "The facts are set forth as favorably to [plaintiff] as those materials allow. . . . In setting forth those facts at the pleading stage, the court does not vouch for their accuracy." *McWilliams v. Cook Cty.*, No. 15-cv-00053, 2018 WL 3970145, at *1 (N.D. Ill. Aug. 20, 2018) (citations omitted).

The complaint alleges as follows: Riviana owned numerous pallets containing food products, stored in the overflow area of an XPO warehouse in Monee, Illinois. (Compl., Dkt. 1, at 2 ¶ 5.)[2] On June 12, 2017, one or more ceiling lights at the warehouse sparked or otherwise malfunctioned, creating flames in the warehouse that ultimately destroyed Riviana's goods. (*Id.* at 2 ¶¶ 6-7.)

Riviana's first count, breach of contract, alleges that XPO breached the governing contracts of carriage. (*Id.* at 3 ¶ 8.) The count is brief and consists of three paragraphs. Riviana alleges that XPO's breaches included "(a) failure to deliver the cargo as scheduled to Riviana and/or its designated consignee(s); (b) the failure to properly care for the cargo between the time of the receipt of the cargo at the place of shipment and the time of eventual delivery, and (c) the eventual delivery of the cargo in a short, missing and depreciated condition." (*Id.* at 3 ¶ 9.) The complaint does not identify by name which contract XPO allegedly breached, nor does it attach a copy of any contract. In XPO's motion to dismiss, XPO identifies the Material Services Handling Agreement ("MHSA") as the relevant contract and attaches a copy of the MHSA. (Dkt. 23 at 2 & Ex. A (Dkts. 23-1 through 23-4).) Riviana disputes that a particular provision of the MHSA is applicable, as discussed below, but Riviana does not appear to dispute generally that the MHSA is relevant. (Dkt. 29 at 6-7.)

Riviana's second count, bailment, alleges that Riviana entrusted XPO with its food products. (Dkt. 1 at 3 ¶ 12.) This count too is brief, but it alleges that Riviana gave XPO the food products in good order and condition and that XPO's possession of the food products created a bailment. (*Id.* at 3 ¶¶ 13-14.) Through no fault of its own, Riviana alleges, the food products were "damaged, destroyed and/or rendered useless" while in XPO's possession, causing Riviana damages of more than $2.26 million. (*Id.* at 4 ¶¶ 15-16.)

Riviana originally filed its complaint in the Southern District of New York. The case was transferred to the Northern District of Illinois under 28 U.S.C. § 1406(a). (Dkts. 6-10.)

---

[2] Docket entries are cited as "Dkt. [docket number]" followed by the page or paragraph number, as needed. Page number citations refer to the ECF page number, which on some documents may differ from other page numbering.

XPO now moves to dismiss Riviana's complaint under Rule 12(b)(6). (Dkt. 23.)

Having reviewed the complaint and the joint status reports (Dkts. 1, 25, 48), the court directed the parties to file a joint jurisdictional statement to confirm certain items related to subject matter jurisdiction (Dkt. 72). The parties complied. (Dkt. 73.) The court has subject matter jurisdiction over Riviana's claims against XPO under 28 U.S.C. § 1332(a)(1). The diversity of citizenship requirement is satisfied. A corporation's "citizenship for diversity purposes is determined by its place of incorporation and its principal place of business." *Moore v. Gen. Motors Pension Plans*, 91 F.3d 848, 850 (7th Cir. 1996) (*per curiam*). Riviana is a Delaware corporation with its principal place of business in Texas. (Dkt. 73 at 1.) XPO is an Iowa corporation with its principal place of business in North Carolina. (*Id.*) The amount in controversy requirement is satisfied. Riviana alleges more than $2.26 million in damages. (Dkt. 1 at 3 ¶ 10.) The court cannot say that it would be "legally impossible" for Riviana to recover more than $75,000. *McCormick v. Indep. Life & Annuity Co.*, 794 F.3d 817, 818 (7th Cir. 2015).

## DISCUSSION

### I. Breach of Contract Claim

XPO argues that Count 1 of Riviana's complaint (breach of contract) should be dismissed because (1) Riviana does not specify which terms of the contract were breached and (2) Riviana does not allege that it complied with a notice requirement of the contract. (Dkt. 23 at 3-5.) The court addresses each argument in turn.

#### A. Specific Terms of the MHSA

As discussed above, Riviana's complaint does not identify by name which contract XPO allegedly breached, nor does it attach a copy of any contract. In XPO's motion to dismiss, XPO identifies the MHSA as the relevant contract and attaches a copy of the MHSA. (Dkt. 23 at 2 & Ex. A (Dkts. 23-1 through 23-4).)

The parties do not dispute the existence of the MHSA, nor do they dispute that Riviana suffered damages. Instead, XPO argues that Riviana's breach of contract claim should be dismissed because "there is literally no allegation as to what term or terms of the parties' contract was breached." (Dkt. 23 at 4.)

The court first addresses whether the court may consider the MHSA on a motion to dismiss. XPO, not Riviana, first provided the MHSA as an attachment to XPO's motion to dismiss. "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion

3

must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

Nonetheless, the court may consider the MHSA without converting the motion to dismiss into one for summary judgment. "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *see also Geinosky*, 675 F.3d at 745 n.1. "[T]his is a narrow exception aimed at cases interpreting, for example, a contract." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998); *see also Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013); *Nawara v. Cty. of Cook*, No. 17-cv-02393, 2019 WL 1399972, at *5 (N.D. Ill. Mar. 28, 2019).

> The incorporation-by-reference doctrine is meant to keep plaintiffs from "evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to [their] complaint a document that prove[s] that [their] claim had no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). Despite courts' "relatively liberal" approach to the exception, *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009), it remains a "narrow" one. *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). It is aimed "at cases interpreting . . . a contract," *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998), and is broad enough to include documents incorporated into the contract by reference. *188 LLC*, 300 F.3d at 735 (incorporating by reference a form that defendant alleged the parties' agreement incorporated by reference). The documents must be "concededly authentic" and must not require "discovery to authenticate or disambiguate." *Tierney*, 304 F.3d at 738–39; *Levenstein*, 164 F.3d at 347 (the district court was within its discretion when, "noting that [plaintiff] wanted further discovery," it "chose to handle the case as a straightforward motion to dismiss, rather than converting it to a motion under Rule 56").

*Wells Fargo Bank, N.A. v. Worldwide Shrimp Co.*, No. 17-cv-04723, 2019 WL 4189480, at *3 (N.D. Ill. Sept. 4, 2019). Here, Riviana brings a breach of contract claim based on the "governing contracts of carriage." (Dkt. 1, at 3 ¶ 8.) The MHSA is central to Riviana's claim. Riviana does not contest the authenticity of the MHSA. The court thus may consider the MHSA.

The court next considers the applicable legal principles. As to choice of law, XPO argues, and Riviana does not contest, that Pennsylvania law governs the MHSA. (Dkt. 23 at 4; Dkt. 23-1 (MHSA) at 15 § 4.6 ("This Agreement shall be interpreted and enforced in accordance with the laws of the Commonwealth of

4

Pennsylvania.").) "In a diversity case, the federal court must apply the choice of law rules of the forum state to determine applicable substantive law. . . . Illinois respects a contract's choice-of-law clause as long as the contract is valid and the law chosen is not contrary to Illinois's fundamental public policy." *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704–05 (7th Cir. 2004) (citation omitted); *see also Flextronics Int'l USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd*, 186 F. Supp. 3d 852, 861 (N.D. Ill. 2016). Riviana does not address choice of law or argue that Pennsylvania law does not apply. Thus, the court applies the substantive law of Pennsylvania. "To state a breach of contract claim under Pennsylvania law, a party must show: (1) the existence of a contract, (2) the defendant's breach, and (3) damages from the breach." *Gen3 Mktg. LEP v. Ella Paradis, Inc.*, No. 19-cv-03498, 2020 WL 247528, at *2 (E.D. Pa. Jan. 15, 2020) (citing *J.F. Walker Co. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002)).

Nonetheless, "a federal court sitting in diversity applies federal pleading requirements even when the claim pleaded arises under state rather than federal law." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) (citation and internal quotation marks omitted). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, a complaint need not contain "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

XPO argues, as noted above, that Riviana's breach of contract claim should be dismissed because "there is literally no allegation as to what term or terms of the parties' contract was breached." (Dkt. 23 at 4.) "The law on the issue of whether it is necessary to cite specific contract provisions to state a claim for breach of contract is divided in this district." *Peerless Network, Inc. v. MCI Commc'n Servs., Inc.*, No. 14-cv-07417, 2015 WL 2455128, at *5 (N.D. Ill. May 21, 2015) (citing cases); *Int'l Capital Grp. v. Starrs*, No. 10-cv-03275, 2010 WL 3307345, at *1 (N.D. Ill. Aug. 19, 2010) ("This Court has come out both ways on this issue.") (citing cases).

However, "A majority of courts in the district have found that a plaintiff is not required to cite a specific contract provision, 'but must at least place the defendant on fair notice of the contractual duty it breached.'" *US Dealer License, LLC v. US Dealer Licensing LLC*, No. 19-cv-03471, 2019 WL 7049927, at *4 (N.D. Ill. Dec. 23, 2019) (quoting *Starke v. Select Portfolio Servicing, Inc.*, No. 17-cv-04123, 2017 WL 6988657, at *2 (N.D. Ill. Dec. 18, 2017)); *see also Peerless Network*, 2015 WL 2455128, at *5-7; *Carlson v. Nielsen*, No. 13-cv-05207, 2014 WL 4771669, at *4 (N.D. Ill. Sept. 24, 2014) (citing cases).

Riviana's allegations here are succinct but straightforward, and are sufficient in the context of this case. The complaint identifies the underlying incident—a June 12, 2017 fire at an XPO warehouse, caused by sparking ceiling lights, that destroyed Riviana's goods. (Dkt. 1 at 2 ¶¶ 5-7.) The complaint alleges that XPO breached "the terms of the governing contracts of carriage." (*Id.* at 3 ¶ 8.) And the complaint lists three ways XPO allegedly breached those contracts: (1) failure to deliver the cargo as scheduled, (2) failure to properly care for the cargo, and (3) delivery of the cargo in a "short, missing, and depreciated condition." (*Id.* at 3 ¶ 9.) The MHSA on its face governs the storage, handling, and disposal of food products, including warehousing services. (Dkt. 23-1 at 1.) In the context of this case and this contract, Riviana's allegations are sufficient to state a plausible claim.

XPO observes that the MHSA is a long and detailed document. (Dkt. 30 at 3.) That may be so, considering all the exhibits and amendments. But many of those appear inapposite on their face. In the particular context of this case and under the relatively straightforward facts alleged here, the specificity of the MHSA could make it easier to identify the provisions in question. Also, the tools of discovery are available for XPO to seek to identify those provisions. *Peerless*, 2015 WL 2455128, at *6 ("Verizon can use contention interrogatories or requests to admit in order to identify the specific provisions at issue").

Although the plaintiff in *Peerless*, unlike Riviana, attached a copy of the contract to the complaint, that circumstance standing alone does not warrant dismissal in the context of this case. There is no dispute that the MHSA is relevant. *See Odeluga v. PCC Cmty. Wellness Ctr.*, No. 12-cv-07388, 2013 WL 4552866, at *7 (N.D. Ill. Aug. 27, 2013) (plaintiff's "failure to attach the employment contract is not, by itself, a reason to dismiss her claim").

The cases XPO cites do not require dismissal here. For example, *Reger Development, LLC v. National City Bank*, 592 F.3d 759 (7th Cir. 2010), discussed the terms of the relevant promissory note, *id.* at 764-65, but did not concern whether a claim must identify specific contract terms to survive a motion to dismiss. As another example, *Official Committee of Unsecured Creditors of Correll Steel on Behalf of Correll Steel v. Fishbein and Company, P.C.*, No. 91-4949, 1992 WL 196768 (E.D. Pa. Aug. 10, 1992), dismissed a breach of contract claim in the accounting professional liability context because the claim "more properly lies in tort than in contract," and because "[e]ven if [defendant]'s duty arose by contract, plaintiff has failed to plead a claim in breach of contract *under Pennsylvania law standards*." *Id.* at *6 (emphasis added). As discussed above, the court applies federal pleading standards.

6

### B. Compliance with MHSA Section 2.6(f)

XPO also argues that Riviana failed to plead that it complied with MHSA § 2.6(f). Section 2.6(f) provides:

> Claims for lost or damaged Inventory must be made in writing no later than: (i) 120 days after the completion of the reconciliation of the complete physical inventory conducted in accordance with Section 2.7 of this Agreement, if such claims arise as a result of that physical inventory; or (ii) 60 days after New World or Riviana become aware of such claims if such claims arise from other sources, e.g., complaints of customers. No action may be maintained by New World or Riviana for loss or damage to Inventory unless a timely written claim has been given as provided for in the immediately preceding sentence.

(Dkt. 23-1 at 7 (MHSA).)

XPO argues that, to plead a breach of contract claim, Riviana must allege that Riviana complied with this provision. (Dkt. 23 at 5.) XPO contends: "Where a contract has a notice requirement that is a precondition to recovery, it will be strictly enforced. *Allied Fire & Safety Equipment Co., Inc. v. Dick Enterprises, Inc.*, 972 F. Supp. 922, 929 (E.D. Pa. 1997) (citation omitted) (applying Pennsylvania law)." (Dkt. 23 at 5.)

In response, Riviana argues that § 2.6(f) is inapplicable by its terms, and even if § 2.6(f) did apply, Riviana need not affirmatively plead compliance with the provision. (Dkt. 29 at 7-8.)

XPO has not provided sufficient authority that Riviana must plead compliance with § 2.6(f) to survive dismissal. The only case XPO cites in support of its argument on this point is *Allied Fire*. But *Allied Fire* involved summary judgment, not a motion to dismiss. 972 F. Supp. at 925. And, ultimately persuaded that there was a "factual dispute as to whether Allied failed to comply with the notice provisions," *Allied Fire* held that the issue of compliance with the notice provisions had to be resolved at trial. *Id.* at 929-30. *Allied Fire* does not speak to pleading requirements or address questions such as which party has the burden of pleading compliance or noncompliance with § 2.6(f), how to analyze the provision under Pennsylvania contract law (e.g., is compliance a condition precedent, is noncompliance an affirmative defense, or should the provision be regarded some other way entirely), and the application of federal pleading standards. If anything, *Allied Fire* suggests that attempting to apply the provision at this stage could raise fact questions inappropriate for resolution on a motion to dismiss. XPO maintains that Riviana tacitly admitted that Riviana did not give timely notice (Dkt. 30 at 4),

7

but there is no such admission in Riviana's pleadings. *Allied Fire* is insufficient to support dismissal.

Given these reasons for denying dismissal, the court need not reach the questions whether § 2.6(f) applies here or, if so, whether Riviana complied with it.

The court denies the motion with respect to Count 1.

## II. Bailment Claim

Riviana alleges in Count 2 that XPO's possession of Riviana's food products created a bailment. XPO contends that Count 2 should be dismissed because, first, "a plaintiff cannot assert a claim based in tort if there is an express contract between the parties that concerns the same subject matter" (Dkt. 23 at 6) and, second, Count 2 does not sufficiently allege the elements of a bailment claim under Illinois law (*id.* at 7-8).

XPO contends that Illinois law applies to the bailment claim, and that the MHSA's choice of law provision (choosing Pennsylvania law) does not apply to the bailment claim. (*Id.* at 6.) In any event, XPO contends, "[t]he result would be the same even if Pennsylvania law were to apply to the bailment claim." (*Id.* at 8 n.2.) Riviana does not address choice of law, contest that Illinois law applies, or contend that there is any difference between Illinois and Pennsylvania law. (Dkt. 29 at 7-9.) "In a diversity case, the federal court must apply the choice of law rules of the forum state to determine applicable substantive law." *Thomas*, 381 F.3d at 704–05. "The Illinois courts hold that a choice-of-law determination is required only when the moving party has established an actual conflict between state laws." *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 729 (7th Cir. 2014). Neither party here contends that there is any conflict, nor does Riviana dispute that Illinois law applies. Thus, a choice of law determination is unnecessary. The court applies Illinois law. *See id.*; *Flextronics*, 186 F. Supp. 3d at 862.

"Under Illinois law, a 'bailment is the delivery of property for some purpose upon a contract, express or implied, that after the purpose has been fulfilled, the property shall be redelivered to the bailor, or otherwise dealt with according to his directions, or kept until he reclaims it.'" *Toll Processing Servs., LLC v. Kastalon, Inc.*, 880 F.3d 820, 827 (7th Cir. 2018) (quoting *Wausau Ins. Co. v. All Chicagoland Moving & Storage Co.*, 333 Ill. App. 3d 1116, 1121 (2002)). "To recover under a bailment theory, a plaintiff must establish (1) an express or implied agreement to create a bailment; (2) a delivery of the property in good condition; (3) the bailee's acceptance of the property; and (4) the bailee's failure to return the property or the bailee's redelivery of the property in a damaged condition." *Toll Processing Servs.*, 880 F.3d at 827 (citation and quotation marks omitted).

"Bailment-related claims may sound in either contract or tort." *Peco Pallet, Inc. v. Nw. Pallet Supply Co.*, No. 15-cv-06811, 2016 WL 5405107, at *6 (N.D. Ill. Sept. 28, 2016) (citing cases). "It is hornbook law that a bailor may maintain any action against a bailee in contract (if the bailee has failed to perform an obligation) or in tort (if the bailee has breached a recognizable duty)." *D'Napoli Food Prod., Ltd. v. Wisconsin Farm Lines, Ltd.*, No. 85-cv-00668, 1985 WL 1376, at *1 (N.D. Ill. May 16, 1985).

> "The rights, duties, and liabilities of the bailor and the bailee must be determined from the terms of the contract between the parties, whether express or implied. *Where there is an express contract, the terms thereof control, since both the bailor and the bailee are entitled to impose on each other any terms they respectively may choose, increasing or diminishing their rights, and their express agreement will prevail against general principles of law applicable in the absence of such an agreement.*"

*Insurance Co. of North America v. Elgin, Joliet & Eastern Ry. Co.*, 229 F.2d 705, 712 (7th Cir. 1956) (quoting C.J.S.) (emphasis added); 4A Ill. Law and Prac. Bailments § 7 (citing *Insurance Co.*, 229 F.2d 705, for the same proposition). "When a bailment is created by an express contract the terms of the contract, either increasing or diminishing the parties' rights, control." *Tucker v. Soy Capital Bank and Trust Co.*, 2012 IL App (1st) 103303, ¶ 57 (1st Dist. 2012). Here, the MHSA—an express contract—governs the parties' relationship.[3]

It is not clear from the allegations of the bailment claim whether the claim sounds in contract or tort. (Dkt. 1 at 3-4 ¶¶ 11-17.) In its brief, Riviana refers to the bailment claim as a "tort/quasi-contract bailment claim" and a "tort claim" that it pleaded in the alternative to the breach of contract claim. (Dkt. 29 at 7-8.) On the other hand, the bailment claim realleges all the prior paragraphs of the complaint, including the breach of contract allegations (Dkt. 1 at 3 ¶ 11), although this may be boilerplate. And, in describing the bailment claim in its brief, Riviana refers to an allegation from the breach of contract claim and states that "[t]here was damage to these goods resulting from XPO's fundamental breaches of, and deviations from, the terms of the governing contract," although this too may be boilerplate. (Dkt. 29 at 8 (citing Compl. ¶ 8).)

---

[3] No party has identified any potentially relevant express contract other than the MHSA. XPO observes that the MHSA contains a merger clause; the clause states that "[t]his Agreement contains the entire agreement among the parties and supersedes any prior or contemporaneous written or oral agreements by and among the parties hereto relating to the subject matter hereof." (Dkt. 23 at 7; Dkt. 23-1 at 16 § 4.7.) If the parties contend that any other express contract is relevant, they are free to identify and produce it in discovery.

9

To the extent that the bailment claim sounds in contract law, it is duplicative of the breach of contract claim and is thus dismissed.  *D'Napoli*, 1985 WL 1376, at *1 (striking a duplicative bailment claim); *cf. Worldwide Media, Inc. v. Twitter, Inc.*, No. 17-cv-07335, 2018 WL 5099271, at *12 (N.D. Cal. Aug. 9, 2018) (under California law, dismissing bailment claim that was "entirely duplicative" of breach of contract and negligence claims); *Pandisc Music Corp. v. Red Distribution, LLC*, No. 04-cv-09365, 2005 WL 646216, at *1 (S.D.N.Y. Mar. 18, 2005) (under New York law, dismissing bailment claim that was "presumptively duplicative" of a breach of contract claim); *Bell v. Blizzard Entm't, Inc.*, No. 12-cv-09475, 2013 WL 12132044, at *9 (C.D. Cal. July 11, 2013) (under Delaware law, dismissing bailment claim that was duplicative of negligence and breach of contract claims).

To the extent that the claim sounds in tort, XPO contends that as a matter of Illinois law, Riviana cannot pursue a tort claim because the parties have an express contract regarding the same subject matter, and the contract contains a merger clause.  (Dkt. 23 at 6-7; Dkt. 23-1 at 16 § 4.7.)  Riviana cites no authority in response, and thus has forfeited any argument along these lines for purposes of the current decision.  Without full development of this issue by the parties, however, the court declines to hold definitively that, under Illinois law, there is no possible way that Riviana could plead a bailment claim sounding in tort alongside a breach of contract claim under the circumstances of this case.  The claim is thus dismissed without prejudice to repleading within 28 days if Riviana believes it can maintain such a claim under Illinois law.

The court need not reach XPO's argument that Count 2 does not sufficiently allege the elements of a bailment claim under Illinois law.

## CONCLUSION

The motion to dismiss [23] is denied with respect to Count 1 and granted with respect to Count 2, without prejudice to Riviana's filing an amended complaint within 28 days.

Date: May 29, 2020                                        /s/ Martha M. Pacold