**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISON**

| | | |
|---|---|---|
| RIVIANA FOODS INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | Case No. 18 CV 06550 |
| | ) | |
| JACOBSON WAREHOUSE COMPANY, INC., | ) | |
| | ) | |
| *Defendant/Third Party Plaintiff,* | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| EXETER 25810 S. RIDGELAND, LLC, | ) | |
| | ) | |
| *Third-Party Defendant/Third Party Plaintiff,* | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JTM ELECTRICAL CONTRACTORS, INC., HOWARD INDUSTRIES, INC., ENGINEERED PRODUCTS, CO., CONSOLIDARED ELECTRICAL DISTRIBUTORS, and MCNELLY SERVICES, INC., | ) | |
| | ) | |
| *Third-Party Defendants.* | ) | |

**EXETER 25810 S. RIDGELAND, LLC'S COMBINED RESPONSE TO JTM ELECTRICAL CONTRACTORS, INC.'S AND HOWARD INDUSTRIES, INC.'S MOTIONS TO DISMISS**

NOW COMES the Third-Party Defendant/Third-Party Plaintiff, EXETER 25810 S. RIDGELAND, LLC, by and through its attorneys, FORD & BRITTON, P.C., and for its Response in opposition to JTM Electrical Contractors, Inc.'s and Howard Industries, Inc.'s Motions to Dismiss, states as follows:

**JTM and Howard's Motions to Dismiss Should Be Denied
Because Exeter is an Alleged Tortfeasor**

JTM and Howard have filed their Motions to Dismiss, contending that Exeter's Third-Party Complaint for Contribution must be dismissed because the only actions pending against Exeter sound in breach of contract, not tort. JTM and Howard are incorrect. The factual allegations of XPO's Third-Party Complaint allow for the possibility that XPO is pursuing a tort action against Exeter.

In its Third-Party Complaint, XPO alleges that Riviana and XPO sustained damages as a result of a fire on June 12, 2017. ¶¶ 18-21.

> In addition to the damage allegedly caused to Riviana's property at the Monee Distribution Center, the Fire caused damages to other parts of the Monee Distribution Center. As a result, XPO incurred the principal amount of $203,022.76 to restore the Lease Premises to an operational state, and incurred lost earnings in the principal amount of $201,000.00 from Miller Coors, another tenant at the Monee Distribution Center that moved its operations from the Monee Distribution Center after the Fire. Dkt. 21, ¶ 21.

XPO alleges the fire was caused by an electrical short circuit in T5 florescent lighting. ¶ 22.

> The cause of the Fire was a short circuit in the electrical system that caused T5 fluorescent lighting fixtures to spark and ignite, triggering the Fire which spread throughout the Monee Distribution Center. Dkt. 21, ¶ 22.

XPO alleges that Exeter retained McNelly Services to construct improvements to the warehouse, including the installation of the T5 lighting that caused the fire, that McNelly Services contractually

delegated the T5 lighting component work to JTM Electrical, and that JTM failed to perform its work in a good and workmanlike manner.

> The updated T5 lighting that was the source of the electrical short that caused the Fire was installed by a contractor hired and supervised by Exeter and was not installed in a good and workmanlike manner. As set forth in Paragraph 31 below, Exeter's insurer has admitted that a subcontractor of the contractor that was hired and supervised by Exeter installed the T5 lights in a negligent manner. Dkt 21., ¶ 24.

> For these reasons, the Fire was caused by the performance of labor or services or the furnishing of materials by Exeter or an employee or contractor of Exeter. Dkt. 21, ¶ 27.

> In its letter refusing XPO's demands for indemnification, Exeter's insurer stated that "[w]e have determined that the proximate cause of the [F]ire was the negligent installation of T5 lights inside the [Monee Distribution Center] warehouse during renovation some months prior to the [F]ire by JTM Mechanical, a subcontractor of McNelly Services. McNelly Services was hired and supervised by Exeter. Dkt. 21, ¶ 31.

XPO alleges that Exeter's and JTM's negligence caused Riviana's alleged damages and also caused XPO to incur direct damages. Amongst other relief, XPO's Third-Party Complaint seeks a monetary judgment against Exeter for XPO's alleged direct damages. The prayer for relief in Count IV requests that

judgment be entered against Exeter in the principal amount of $404,022.76 for the direct damages incurred by XPO. Dkt. 21, ¶¶ 52-56.

JTM and Howard both rely upon *Guerino v. Depot Place Partnership*, 730 N.E.2d 1094 (2000). In *Guerino,* two causes of action were plead against the third-party defendant: contribution and breach of contract. 730 N.E.2d at 1096. The contribution claim was dismissed based on the statute of limitations, leaving only the breach of contract claims as viable claims. *Id.* The *Guerino* court held that the third-party plaintiff whose only liability was contractual liability, failed to state a cause of action for contribution. *Id.* at 1098-1099. The court based its ruling on the fact that there was no common liability and that there could not be any common liability on the part of the third-party defendants; therefore, the contribution claim could not stand. *Id*.

JTM and Howard agree that Exeter's contribution claims are viable if Exeter is an alleged tortfeasor. As set forth above, XPO's allegations against Exeter do not relate exclusively to breach of contract. The factual allegations of XPO's Third-Party Complaint allow for the possibility that Exeter has (1) tort liability for the damages sustained directly by XPO as a result of the fire and (2) further, that Exeter has some tort liability for "sudden and dangerous injury" to Riviana's goods, separate and apart from any breach of contract. Given the above-stated allegations in XPO's pleading against Exeter, the contribution claims are appropriate and should not be dismissed.

**JTM's Motion to Dismiss Should Be Denied**
**Because JTM Shares Common Liability With Exeter**

Assuming *arguendo*, the only allegations against Exeter are for breach of contract, Exeter does and can allege that it shares common liability with JTM for breach of contract; therefore, the contribution claims against JTM should not be dismissed.

The *Guerino* court left open the possibility that a contribution claim could exist in a breach of contract case if the third-party plaintiff could show that there was common liability for the breach of

contract. *Guerino*, 730 N.E.2d at 1098-1099. The court explained that in the *Guerino* case, the third-party plaintiff could satisfy section 2(a) of the Act because it was potentially liable in tort at the time the plaintiff was injured but was unable to satisfy the common liability requirement of Section 2(b). *Id.*

Exeter can satisfy Section 2(a) for the same reasons as the third-party plaintiff in *Guerino*. Exeter can also satisfy Section 2(b), showing common liability, which the third-party plaintiff was unable to do in *Guerino*. Therefore, Exeter's contribution claim should not be dismissed.

While JTM was not originally a party to the XPO/Exeter Agreement, JTM was a subcontractor hired to perform work under that Agreement and agreed in its Subcontract to be bound by all contract documents. Ex. A (JTM Subcontract), ¶ 1. JTM also agreed that it "possesse[d] the required experience, skills, equipment and qualified employees to complete the Work in a proper and timely manner, as required by the Contract Documents." Ex. A, ¶ 3. JTM made an affirmative decision to perform the work required under the XPO/Exeter Agreement and therefore, shares common liability for its acts and omissions in performing that work under the Agreement.

XPO alleges that Exeter, by and through JTM, failed to install the T5 lighting in a good and workmanlike manner, which resulted in damages to XPO. Dkt. 21 ¶¶ 22, 24, 27, 31, 43-44, 49-50, 55-56. Exeter alleges that JTM failed to install the T5 lighting in a good and workmanlike manner, resulting in the damages alleged by XPO. Dkt. 84 ¶¶ 29-34.

Any alleged breach by Exeter in the installation of the T5 lighting that resulted in the fire and damages alleged, is actually a result of JTM's actions when it installed the lighting, and if Exeter were required to pay for the fault of JTM, Exeter would be paying more than its pro rata share of liability, which the Contribution Act seeks to prevent. Exeter can, therefore, contrary to the third-party plaintiff in *Guerino*, assert that it will be required to pay more than its *pro rata* share of common liability because its

liability arises out of JTM's failure to perform its work provided for in the XPO/Exeter Agreement in a good and workmanlike condition. Accordingly, the claims against JTM should not be dismissed.

**JTM's Motion to Dismiss Should be Denied Because JTM Contracted to be Liable in Contribution**

In Illinois, indemnification clauses in construction contracts that promise to indemnify another person from that person's own negligence are void and wholly unenforceable. 740 ILCS 35/1. Some construction contracts instead, promise indemnity for the contracting parties' own negligence, and said clauses are often termed partial or proportional indemnity agreements. Under Illinois law, partial indemnity does not exist; rather, partial indemnity clauses in Illinois are recognized as contractual promises of contribution. *Sandlin v. Harrah's Illinois Corp.*, 2016 IL App (3d) 150018 at ¶ 14. Contribution claims in Illinois, whether based on contract or otherwise, can only be brought by and through the Contribution Act, not via independent contractual contribution claims, which are often mislabeled as claims for indemnification. *Id.* at ¶¶ 13-15.

In this case, JTM agreed to

> Defend, indemnify, and hold harmless [Exeter] … from and against all liabilities, claims, damages, loss, judgments, and bodily injuries to persons (including death), damage or destruction to tangible property (regardless of the ownership thereof), costs and expenses, including reasonable attorney's fees, arising out of, resulting from or connected with, either directly or indirectly, a breach by [JTM] … of any term or provision of this Subcontract or the other Contract Documents, or the performance of or failure to perform the Work by [JTM], to the extent caused in whole or in part by the acts or omissions of [JTM] … The indemnity provided by [JTM] hereby shall also include any liabilities, claims, damages, loss and

> judgments sustained by or asserted against an indemnitee in any way related to [JTM's] Work that do not necessarily concern bodily injury and/or property damage matters.
>
> …
>
> In the event that any of the indemnity provisions described herein are deemed invalid or unenforceable by any court of competent jurisdiction, then the parties agree that the entirety of these provisions should be interpreted to create the greatest degree of valid and enforceable indemnity by [JTM] as otherwise described herein.

Ex. A (JTM Subcontract), ¶ 5 (a), (e).

JTM contractually agreed to be liable in contribution for its acts and omissions in performing the T5 lighting work. JTM agreed that it was liable in contribution for any claims asserted against Exeter that were in any way related to JTM's actions, including claims other than bodily injury and property damage. JTM contractually agreed to be liable for its *pro rata* share of fault for the damages alleged by XPO. JTM's promise is consistent with the policy of the Contribution Act, which is the equitable sharing of damages.

In Illinois, the only avenue for Exeter to pursue said contractual promise of contribution that JTM owes to Exeter is through a contribution claim filed under the Contribution Act, which Exeter plead in its Third-Party Complaint. If JTM's motion is granted, Exeter will be left without a remedy to pursue JTM's contractually promised contribution. Illinois law does not contemplate leaving a party without a vehicle for recovery. Thus, Exeter's contribution claims against JTM must stand.

Should this Court determine that the Contribution claims against JTM, as currently plead, are improper but agree that there should be a vehicle for recovery of the contractually agreed upon

contribution, Exeter should be granted leave to file an amended pleading against JTM, consistent with this Court's ruling on the matter at hand.

WHEREFORE, Third-Party Defendant/Third-Party Plaintiff, EXETER 25810 S RIDGELAND, LLC, requests that this Honorable Court deny JTM Electrical Contractors, Inc.'s and Howard Industries, Inc.'s Motions to Dismiss.

Respectfully submitted,

**FORD & BRITTON, P.C.**

s/ Meghan A. Gonnissen
Meghan A. Gonnissen

Scott R. Britton
Meghan A. Gonnissen
**FORD & BRITTON, P.C.**
Attorneys for Exeter 25810 S. Ridgeland, LLC.
120 N LaSalle St., Suite 950
Chicago, Illinois 60602
Tel: (312) 924-7529
mgonnissen@fordbritton.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2021, I electronically filed the foregoing using the Court's CM/ECF system, which will send notification of such filing to all parties of record.

BY: s/Meghan A. Gonnissen
Meghan A. Gonnissen
FORD & BRITTON, P.C.
Attorneys for Exeter 25810 S. Ridgeland, LLC
120 N. LaSalle St., Suite 950
Chicago, IL 60602
(312) 924-7500
mgonnissen@fordbritton.com