IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RIVIANA FOODS, INC., <br> *Plaintiff*, <br> v. <br> GXO WAREHOUSE COMPANY, INC., <br> *Defendant/Third-Party Plaintiff* | Cause No. 1:18-cv-06550 <br><br> Judge Martha M. Pacold <br><br> Magistrate Judge Jeannice W. Appenteng |

## DECLARATION OF ALLISON N. MANGER

I, Allison N. Manger, declare, pursuant to the penalties of perjury, that the following is true and correct to the best of my knowledge:

1. My name is Allison N. Manger. I am over the age of 18, am of sound mind, and have personal knowledge of the facts stated herein. I understand that this Declaration may be submitted to the Court in connection with Defendant/Third-Party Plaintiff GXO Warehouse Company, Inc.'s ("GXO's") Motion to Compel Production of Documents and Answers to Interrogatories.

2. I am an attorney duly admitted to practice law in the State of Illinois, and I am counsel for GXO in the above-captioned litigation.

3. A true and correct copy of GXO's First Set of Requests for Production Directed to Plaintiff, which was served on September 17, 2024, is attached hereto as Exhibit A.

4. A true and correct copy of Plaintiff's Response to Defendant's First Set of Requests for Production, which was served on October 7, 2024, is attached hereto as Exhibit B.

5. A true and correct copy of GXO's Second Set of Requests for Production of

Documents Directed to Plaintiff, which were served on September 30, 2024, is attached hereto as Exhibit C.

6. A true and correct copy of an email from Riviana's counsel listing objections to GXO's Second Requests for Production of Documents, which was sent to GXO's counsel on November 14, 2024, is attached hereto as Exhibit D.

7. A true and correct copy of GXO's Second Set of Interrogatories Directed to Plaintiff, which was served on September 17, 2024, is attached hereto as Exhibit E.

8. A true and correct copy of Plaintiff's Responses to Defendant's [Second Set of] Interrogatories, which was served on October 7, 2024, is attached hereto as Exhibit F.

9. A true and correct copy of Plaintiff's Supplemental Responses to Defendant's [Second Set of] Interrogatories, which was served on October 17, 2024, is attached hereto as Exhibit G.

10. A true and correct copy of the meet and confer letter sent by GXO's counsel, Larry Friedman, to Riviana's counsel, Larry Glynn, on October 14, 2024 is attached hereto as Exhibit H.

11. On October 16, 2024, Riviana's counsel (Larry Glynn), and GXO's counsel (Larry Friedman and Allison Manger) met and conferred by telephone. The parties were able to come to an agreement on some of their discovery disputes, including the following: (1) Riviana agreed to produce an unredacted version of its insurance policy upon entry of a confidentiality order, (2) Riviana agreed to either produce a privilege log or produce supplemental responses to GXO's discovery to indicate that nothing was being withheld based on privilege or work product objections, and (3) Riviana would produce the "Claim File" for the fire at the Monee warehouse.

12. Also during the October 16, 2024 meet and confer, Riviana's counsel took the

position that GXO is not entitled to any damages discovery other than what Riviana has already provided, asserting that requests for anything else are a "fishing expedition." GXO's counsel took the position that GXO has the right to discovery regarding damages, which includes discovery of communications between Riviana and its underwriters and other individuals who assessed the fire loss for the purpose of determining the amount of Riviana's alleged damages, as well as discovery regarding the extent to which Riviana was reimbursed for all or part of that loss and the extent to which Riviana is representing its insurers as their subrogor.

13. On October 16 and October 17, 2024, during negotiations over Riviana's failure to answer GXO's interrogatory regarding whether or not the complaint Riviana filed in the Southern District of New York was verified, and after GXO presented the ECF filing from New York which included no verification, Riviana acknowledged that no verification exists for the complaint on the ECF docket for the Southern District of New York. Attached hereto as Exhibit I is a true and correct copy of emails regarding the verification dated October 16 and October 17, 2024, by and between Mr. Glynn (counsel for Plaintiff) and Mr. Friedman (counsel for GXO).

14. Although Riviana had agreed during the October 16 meet and confer to produce the Claim File and either a privilege log or supplemental responses to GXO's discovery to indicate that nothing was being withheld based on privilege or work product objections, it did not produce those materials in the weeks immediately following the meet and confer. On November 12, 2024, GXO's counsel (Jeff Brown) sent a letter to Riviana's counsel (Mr. Glynn) outlining the areas where the parties had come to agreement during the October 16 meet and confer and asking for the materials that Riviana had agreed to produce. The letter also outlined areas where the parties continued to disagree. A true and correct copy of that letter is attached hereto as Exhibit J.

15. Riviana's counsel (Mr. Glynn) responded to the letter on November 12 by emailing

a privilege log and the Claim File to GXO's counsel (Mr. Brown). A true and correct copy of the communications between Mr. Glynn and Mr. Brown on November 12-13, 2024 regarding the Claim File is attached hereto as Exhibit K.

16. In those emails, counsel for the parties discussed Riviana's refusal to produce emails in the Claim File with their attachments, a matter that was resolved after the Court ordered Riviana to provide the Bates numbers of the attachments. *See* ECF 262.

17. A true and correct copy of the privilege log produced by Riviana on November 12 is attached hereto as Exhibit L. There are five documents on the privilege log, all of which appear to be emails between Mr. Glynn and Tomas Appleyard of Barbuss. During communications on November 12 regarding the production, GXO's counsel (Mr. Brown) asked for information on the relationship between Mr. Glynn and Barbuss and Mr. Appleyard's position at Barbuss for the purpose of assessing the privilege log. *See* Exhibit K (discussed above). Mr. Glynn asserted that he represents Barbuss. *Id.* He then threatened to seek sanctions "[a]gain" if GXO asked any further questions on the topic. *Id.*

18. On November 14, 2024, Mr. Brown inquired of Mr. Glynn whether Riviana would be providing documentation regarding the authority of Riviana to pursue its damage claims on behalf of the Subrogated Underwriters, something that Riviana stated it would consider at the time of the parties' October 18, 2024 status report. *See* ECF 250 at 3. Mr. Glynn indicated that Riviana would not be providing such documentation. A true and correct copy of the November 14, 2024 emails between Mr. Brown and Mr. Glynn is attached hereto as Exhibit M.

19. Also on November 14, 2024, Mr. Brown sent an email to Mr. Glynn asking about Riviana's responses to GXO's Second Requests for Production, which had been due on October 30, 2024, but had not been served by that date. Mr. Glynn responded by emailing a list of 14

objections to me, which he asserted apply to "each and every request made in GXO's Second Request for Production of Documents." A true and correct copy of Mr. Brown's November 14 email to Mr. Glynn regarding the Second Requests for Production is attached hereto as Exhibit N, and, as referenced above, a true and correct copy of Mr. Glynn's email to me listing objections is attached hereto as Exhibit D.

20. On November 15, 2024, I met and conferred again with Mr. Glynn via telephone. Mr. Glynn stated that Riviana would not produce any more documents in response to GXO's requests or provide any further answers to GXO's interrogatories. He stated that he told his client to search for responsive documents, and the documents that were previously produced are all that his client provided to him. He repeatedly said "wink, wink, nudge, nudge" when I tried to obtain information on the extent of the search Riviana had conducted, and he did not provide any further information on what types of searches were done. I pointed out that some things seemed to be missing, such as, for example, communications internally at Riviana regarding its damages and communications between Riviana and EIMC regarding the Riviana documents attached to EIMC's report. Mr. Glynn took the position that unless GXO knows what communications took place and can identify them by date, etc., any request for such communications is a "fishing expedition." I stated that there would be no way for GXO to know in advance exactly what communications Riviana had, and that finding out such information is the purpose of discovery. Mr. Glynn stood by the position that Riviana will not be producing any further documents.

21. To evaluate Riviana's objections that many of GXO's requests and interrogatories are over broad or unduly burdensome, I asked Mr. Glynn whether Riviana had conducted any analysis regarding how much it would cost or how much time it would take to respond to GXO's requests and interrogatories. He stated that Riviana had not conducted such an analysis.

22. I asked Mr. Glynn whether Riviana would be producing any documents in response to GXO's Second Requests for Production of Documents. He stated that Riviana would not be producing any documents in response to those requests and would stand by the objections he emailed on November 14.

23. Mr. Glynn also reiterated during our November 15 call that Riviana would not be providing any documents that show Riviana's authorization to act as subrogor for its underwriters. He stated that Riviana may provide a "novation" if the Court requires it, but he does not think it is necessary.

24. Finally, during the November 15 call, I confirmed with Mr. Glynn that Riviana is not withholding any documents on the basis of privilege or work product other than those listed on the privilege log he provided on November 12.

25. After my call with Mr. Glynn, the Court ordered Riviana to provide Bates numbers for the attachments to the emails in the Claim File. ECF 262. On November 21, 2024, Mr. Glynn sent an email to GXO's counsel attaching (1) a list of attachments from the Claim File emails, with Bates numbers and (2) several documents, including a notice of a site visit to the Monee warehouse, a summary of costs from the fire, and a "combined" pdf containing EIMC survey reports. A true and correct copy of Mr. Glynn's email is attached hereto as Exhibit O. A true and correct copy of the attachment list he provided is attached hereto as Exhibit P.

26. The attachment list included Bates numbers from some previously produced documents, but it also included new Bates numbers—RIV000509 through RIV000554—which corresponded to the materials that Mr. Glynn had attached to his email. Those materials contain two new documents that were not previously produced—Supplemental Reports by EIMC dated August 3, 2017 (RIV000535-541) and December 11, 2017 (RIV000542-554). True and correct

copies of those newly produced Supplemental Reports are attached hereto as Exhibits Q and R.

27. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts set forth above are true and correct.

FURTHER DECLARANT SAYETH NAUGHT.

Dated: December 2, 2024

*Allison Manger*

---
Allison N. Manger, Declarant.