IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RIVIANA FOODS, INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>GXO WAREHOUSE COMPANY, INC.,<br><br>*Defendant/Third-Party Plaintiff* | Cause No. 1:18-cv-06550<br><br>Judge Martha M. Pacold<br><br>Magistrate Judge Jeannice W. Appenteng |

**JOINT STATUS REPORT REGARDING DAMAGES DISCOVERY**

In response to the Court's December 10, 2024 Docket Entry (ECF 273), Plaintiff Riviana Foods, Inc. ("Riviana") and Defendant/Third-Party Plaintiff GXO Warehouse Company, Inc. f/k/a Jacobson Warehouse Company, Inc. ("GXO") submit the following Joint Status Report regarding their meet and confer efforts subsequent to that date:

**I.      Summary of Meet and Confer Efforts**

On December 11, 2024, Riviana's counsel (Larry Glynn) informed GXO's counsel (Larry Friedman, Jeff Brown, and Allison Manger) that the following locations had been searched for documents responsive to GXO's document requests: (1) the EIMC survey report and its attachments and (2) the emails of Tomas Appleyard of Barbuss. Riviana's counsel stated that the following search terms had been used for that search: "Monee," "fire," "June 12, 2017," "warehouse," "warehouse fire," "insurance," "subrogation," "survey," "surveyor," "Riviana," "AON," "EIMC," "XPO," and "Jacobson." On December 12, 2024, Mr. Glynn informed GXO's counsel that an additional search had been conducted. Specifically, Mr. Glynn stated that Riviana had searched the emails and a document folder for one particular document custodian—Carmen Stacy-Haworth, former Assistant General Counsel at Riviana. Mr. Glynn stated that the following search terms were used for Ms. Stacy-Haworth's files: "XPO fire;" "fire;" "warehouse;" "Monee;" "damages;" "June 12, 2017;" "subrogation;" "insurance;" and "Fire Monee." Riviana produced 415 pages of documents from Ms. Stacy-Haworth's files, some of which were duplicative of each other and/or duplicative of previous productions. (*e.g.,*

33359433

222 of the 415 pages are the Material Handling Services Agreement ("MHSA") and all of the amendments thereto, which had been previously exchanged by the parties in the litigation. Riviana reproduced those pages as attachments to a newly-produced email from Ms. Stacy-Haworth.)

GXO's counsel determined from the new documents in those files that there were 6 additional document custodians who had significant involvement in Riviana's calculation of damages and/or negotiations with its insurers whose files should be searched: Michael Slavin, Lisa Bedford, Matt Dutka, Michelle Hogan, Michael Bunker, and Parker Schrader.

On December 16, 2024, GXO's counsel (Ms. Manger) asked Mr. Glynn if Riviana would agree to search the files of those 6 additional document custodians. GXO also requested the following additional search terms: "proof of loss," "losses," "Brueck," "DeKoker," "Blackman," "Holland," "Valitutto," "Aon," "underwriters," "EIMC," "Appleyard," "Barbuss," "subrogated," "subrogor," "subrogee," "insured," and "insurer." Additionally, GXO asked Riviana to produce 13 select email attachments that had not been included in the December 12 production and which GXO was unable to identify as previously produced documents from the context alone. Finally, GXO noted that one email from Anthony Blackman at Aon regarding the damages calculation included a chart that was cut off in the production and requested that Riviana produce the complete chart. Pointing to the pending deadline of January 28, 2025 for the disclosure of expert witnesses, GXO asked whether Riviana would produce the requested documents by January 6, 2025.

GXO also raised other pending disputes with Riviana's counsel, including the following: (1) Riviana had not yet provided any substantive answers to Interrogatory Nos. 3-5, 7, and 12-14 of GXO's Second Set of Interrogatories, which are subject to GXO's motion to compel and (2) Riviana still had not produced any documents or provided any interrogatory answers that explain what interest the "Interested Subrogated Underwriters" have in this litigation and the agreement by which Riviana is pursuing this lawsuit on their behalf. Additionally, GXO referenced an email from Riviana's counsel on December 11, 2024 offering to add the names of the Interested Subrogated Underwriters to the case caption in this lawsuit. GXO expressed its belief that, for such an action to be valid, Riviana would need to move to amend the complaint to officially add the names of each of the Interested Subrogated Underwriters as plaintiffs, and Riviana's counsel would need to enter an appearance for each of them. GXO asked whether Riviana intends to take this course of action. Lastly, GXO

asked Riviana's counsel to confirm that Riviana had intended to produce all documents that Riviana produced from the files of Ms. Stacy-Haworth. GXO informed Riviana's counsel that it would like to resolve as many of these issues as possible to minimize the number of discovery issues to be resolved by the Court.

On December 16 and 17, 2024, Mr. Glynn provided attachments to 11 of the 13 emails on GXO's list of missing attachments. On December 17, 2024, Mr. Glynn produced 120 pages of documents which he later identified as having been retrieved from Michael Slavin's files. Also, Mr. Glynn asserted that (1) the documents produced on December 16 and 17 are responsive to Interrogatories 3-5 and 7, (2) Riviana stands on its objections to Interrogatories 12-14, and (3) the documents produced on December 16 and 17 "satisfactorily explain the relationship between Riviana and its underwriters."

Ms. Manger and Mr. Glynn had a meet and confer call on December 19, 2024. During that call, Mr. Glynn stated that it does not appear that Riviana has any remaining responsive documents from the 5 remaining document custodians identified by GXO (Bedford, Dutka, Hogan, Bunker, and Schrader). He stated that Riviana will confirm whether or not anything is left. He stated that Riviana did not have a litigation hold in place and that Riviana would provide GXO with its document retention policy. Mr. Glynn also agreed to produce supplemental responses to Interrogatories 3-4, 7, and 12-14 representing that Riviana has no knowledge of any oral communications responsive to those interrogatories. (Mr. Glynn sent supplemental interrogatory answers to GXO's counsel after the call.) Mr. Glynn confirmed that Riviana is unable to find the additional missing email attachments or a version of the email from Mr. Blackman without the chart cut off. He also stated that Riviana is attempting to obtain a written agreement from the Cargo Underwriters acknowledging that they will be bound by this litigation and that Riviana is pursuing this litigation on their behalf and with their authority to represent them. Finally, Mr. Glynn stated that Riviana would like to claw back a certain email between Ms. Stacy-Haworth and an individual at Aon, expressing the view that it is work product.

Riviana's counsel has advised that he is continuing to discuss the discovery issues with his client.

## II.    **GXO Warehouse Company, Inc.'s Position**

Riviana has represented that it is willing to provide discovery, but some disagreements remain. First, GXO believes Riviana should search the relevant document custodians' files using the more comprehensive set of search terms suggested by GXO, in addition to the terms Riviana has already used. Those additional search

terms, which are reasonably directed to obtaining relevant information, will help ensure that all responsive documents are found.

Second, GXO disagrees with Riviana's position that it need not supplement its responses to Interrogatories 12-14 and related document requests, which seek relevant communications with other entities involved in assessing the losses from the fire. Such documents may include communications relevant to the remaining damages issues in this case and should be produced.

Third, GXO disagrees with Riviana's position regarding the subrogation issue. The documents Riviana produced on December 16 and 17 do not indicate that the Underwriters have authorized Riviana to pursue this action on their behalf. Thus, there is still no written authority or other document saying that the Underwriters will be bound by this litigation and will not separately seek recovery from GXO. GXO will evaluate any agreement Riviana provides with the Cargo Underwriters to determine the extent to which such an agreement is sufficient to address its concerns regarding the real parties in interest.

GXO also will evaluate the information it receives from Riviana regarding the five remaining document custodians, the document retention policy, and the lack of a litigation hold. GXO acknowledges that Riviana cannot produce documents that no longer exist. Once it receives the information Riviana has agreed to provide, GXO will determine whether any action should be taken in light of Riviana's failure to put a litigation hold in place for those custodians. GXO will review Riviana's request to claw back the referenced email.

### III.     Riviana Foods, Inc.'s Position

Riviana's position is that all relevant responsive documents have been provided from its search of the EIMC report and its attachments and the files of Appleyard at Barbuss and Stacy-Haworth and Slavin at Riviana. With respect to the 5 additional document custodians identified by GXO, Riviana does not believe that any responsive documents remain that have not been deleted per Riviana's document retention policy, but it is taking steps to confirm. Additionally, Riviana asserts that it has been unable to find any additional email attachments identified by GXO, nor has it been able to find a version of Mr. Blackman's email with the complete chart. Finally, Riviana does not believe searches using additional search terms are necessary and that the terms it used are sufficient.

With respect to GXO's interrogatories, Riviana has provided interrogatory answers stating that is not aware of any oral communications responsive to Interrogatories 3-4, 7, and 12-14. Riviana also will provide specific identification of documents already produced that it believes provide answers to Interrogatories 3-5 and 7.

While GXO has stated with respect to Interrogatories 12-14 that it is only asking for communications regarding Riviana's damages, the reimbursement from the Cargo Underwriters, and the subrogation issue, Riviana asserts that it has provided more than enough documentary evidence demonstrating Riviana's damages, reimbursement from Cargo Underwriters and the subrogation issue. Riviana also disagrees that the real party in interest issue is still a problem. Rather, in Riviana's view, this is a straightforward subrogation action. However, Riviana is attempting to obtain a written agreement from the Cargo Underwriters acknowledging that Riviana has authority to represent them in this lawsuit and that they will be bound by the results of this lawsuit.

Riviana's position is that the email between Ms. Stacy-Haworth and an individual at Aon is attorney work product and should be clawed back.

For the reasons stated above, the parties are unable to resolve their remaining disputes.

| | |
|---|---|
| /s/ *Lawrence C. Glynn* | /s/ *Allison N. Manger* |
| Lawrence C. Glynn | Lawrence C. Friedman, IL – 06192019 |
| CARUSO GLYNN, LLC | Allison N. Manger, IL – 6295220 |
| 242-03 Northern Boulevard | THOMPSON COBURN LLP |
| Suite 201 | One US Bank Plaza |
| Little Neck, New York 11362 | St. Louis, Missouri 63101 |
| (718) 819-8668 | (314) 552-6000 |
| (718) 767-2474 Fax | (314) 552-7000 Fax |
| lglynn@carusoglynn.com | lfriedman@thompsoncoburn.com |
| | amanger@thompsoncoburn.com |
| Karl W. Roth | |
| William P. Foley | Jeffrey N. Brown – *pro hac vice* |
| ROTH LAW GROUP LLC | THOMPSON COBURN LLP |
| 150 N. Michigan Ave. | 10100 Santa Monica Boulevard |
| Suite 800 | Suite 500 |
| Chicago, Illinois 60601 | Los Angeles, California 90067 |
| (312) 419-9599 | (310) 282-9418 |
| kwr@rothlawgroup.com | (310) 282-2501 Fax |
| wpf@rothlawgroup.com | jbrown@thompsoncoburn.com |
| *Attorneys for Plaintiff Riviana Foods, Inc.* | *Attorneys for Defendant/Third Party Plaintiff GXO Warehouse Company, Inc.* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2024 a true and correct copy of the foregoing was filed and served via the Court's electronic notification system on all parties of record.

/s/ *Allison N. Manger*