IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RIVIANA FOODS, INC., *Plaintiff*, v. GXO WAREHOUSE COMPANY, INC., *Defendant/Third-Party Plaintiff* | Cause No. 1:18-cv-06550 <br> Judge Martha M. Pacold <br> Magistrate Judge Jeannice W. Appenteng |

**JOINT STATUS REPORT REGARDING DAMAGES DISCOVERY**

In response to the Court's January 21, 2025 Docket Entry (ECF 282), Plaintiff Riviana Foods, Inc. ("Riviana") and Defendant/Third-Party Plaintiff GXO Warehouse Company, Inc. f/k/a Jacobson Warehouse Company, Inc. ("GXO") submit this Joint Status Report regarding their meet and confer efforts subsequent to that date. Section I summarizes the parties' meet and confer efforts. Sections II and III set forth the parties' respective positions, as requested in the Court's Docket Entry.

**I.   Summary of Meet and Confer Efforts**

   **A.   Search Terms and Custodians**

On January 23, 2025, GXO's counsel (Allison Manger) emailed Riviana's counsel (Larry Glynn) a list of GXO's proposed parameters for the search. The proposal included the following master list of search terms:

>     AON
>     Appleyard
>     Barbuss
>     Bedford
>     Blackman
>     Brueck
>     Bunker
>     Chicago DC
>     CHIDC inventory claim

33542051

        Damages
        DeKoker
        Dutka
        EIMC
        Fire
        Haworth
        Hogan
        Holland
        Insurance
        Insured
        Insurer
        Jacobson
        June 12, 2017
        Losses
        Monee
        New World Pasta
        proof of loss
        Riviana
        Schrader
        Slavin
        Stacy
        Subrogated
        Subrogation
        Subrogee
        Subrogor
        Survey
        Surveyor
        Underwriters
        Valitutto
        Warehouse
        XPO

GXO proposed that this master set of search terms should be used for the three custodians Riviana has already searched (Appleyard, Stacy-Haworth, and Slavin) to the extent Riviana has not already searched these terms for those custodians. GXO also proposed that those terms should be modified based on the custodian, such that Appleyard's files should not be searched for "Appleyard" or "Barbuss" and the files of Riviana custodians (including Stacy-Haworth and Slavin) should not be searched for "Bedford," "Bunker," "Dutka," "Haworth," "Hogan," "New World Pasta," "Riviana," "Schrader," "Slavin," or "Stacy." GXO also proposed that, to the extent Riviana determines that the files of any other relevant custodians at Riviana are available to be searched (including Bedford, Bunker,

Dutka, Hogan, and Schrader), their files should be searched for all of the master set of search terms, with the same exceptions as for Stacy-Haworth and Slavin.

Additionally, GXO proposed that Riviana should search for communications related to the Fire with the entities referred to in GXO's First Requests for Production Nos. 13-38 and Second Requests for Production Nos. 3-4, which include:

>Office of the Illinois State Fire Marshall
>Exeter
>JTM Electrical Contractors
>Howard Industries
>Engineered Products
>Consolidated Electrical Distributors
>McNelly Services
>MillerCoors
>New World Pasta
>VeriClaim
>Secura Insurance
>Integro
>SEA Limited
>Trac-Technical Resources & Consulting
>Regional Reporting
>EFI Global
>McLarens
>Ward & Associates
>Unlimited Fire Restoration
>Continental Insurance Company
>XL Specialty Insurance Company
>Starr Indemnity & Liability Company
>Endurance American Insurance Company
>Zurich American Insurance Company
>XL Catlin Insurance Group
>ACE American Insurance Company

GXO proposed that, to the extent these are entities with which Riviana would not normally communicate apart from the fire at the Monee Warehouse, Riviana should simply search the names of the entities for any documents responsive to GXO's document requests, but if they are entities with which Riviana has regular communications apart from the fire (such as New World Pasta), then the searches for those entities may be limited by the master search terms set forth above (with the same exceptions as

for Stacy-Haworth and Slavin). Finally, it proposed that, in accordance with the Court's Docket Entry, Riviana should supplement its responses to GXO's First Requests for Production Nos. 13-38, Second Requests for Production Nos. 3-4, and Second Interrogatories Nos. 12-14.

On January 24, 2025, Ms. Manger met and conferred with Mr. Glynn via telephone call. During that call, the parties reached an agreement on search terms for the files of Tomas Appleyard at Barbuss. These include the following terms:

> AON
> Bedford
> Blackman
> Brueck
> Bunker
> Chicago DC
> CHIDC inventory claim
> DeKoker
> Dutka
> EIMC
> Fire
> Haworth
> Hogan
> Holland
> Jacobson
> June 12, 2017
> Losses
> Monee
> New World Pasta
> proof of loss
> Riviana
> Schrader
> Slavin
> Stacy
> Subrogated
> Subrogation
> Subrogee
> Subrogor
> Survey
> Surveyor
> Valitutto
> Warehouse
> XPO

The parties agreed that Appleyard's files will be searched for any terms on this list that have not already been used in previous searches of his files.

In the January 25 call, Riviana's counsel did not object to GXO's other proposed search terms, custodians, or other proposed parameters of the search for documents at Riviana. Rather, Mr. Glynn informed Ms. Manger for the first time that Riviana believed that it would need to hire a third party vendor to conduct the searches contemplated under the Court's Docket Entry, and that Riviana estimated that the searches would cost between $250,000 and $350,000. Ms. Manger asked Mr. Glynn for a breakdown of the costs that made up that estimate for the purpose of determining (1) why the estimates were so high and (2) whether there were areas where the parties could negotiate to reduce the potential costs of the searches. Mr. Glynn did not have information regarding the breakdown of costs for the searches or why the costs would be so high. He stated that he would try to obtain that information from his client.

On February 1, 2025, Mr. Glynn emailed GXO's counsel stating that Riviana felt it needed to hire a third party vendor to perform the searches, but provided no information on the breakdown of costs for its estimate that the searches would cost between $250,000 and $350,000. Mr. Glynn stated that Riviana's IT team was working with its vendor to complete the data collection and searches using the mandated search terms, and that Riviana would provide an estimate of the number of "hits" per custodian and a cost estimate early the following week. To date, Riviana has not provided this information to GXO. Riviana also indicated it would seek to shift the costs of the production to GXO.

**B.     In Camera Review of Clawback Document**

The parties have also conferred regarding the email Riviana wishes to claw back as work product. They have not come to an agreement. Therefore, the parties request permission to file a joint report under seal that sets forth the parties' positions regarding whether the email is work product and whether Riviana

has the right to claw it back, and to submit the email itself under seal as an attachment to the report so that the Court may review it *in camera*.

## II. GXO's Position

The parties agree about search terms and parameters for the files of Tomas Appleyard at Barbuss. For other custodians, Riviana does not disagree regarding search terms or communications with third parties or argue that GXO's proposal exceeds the parameters of what the Court ordered in its Jan. 21, 2025 Order (ECF 282).[1] Riviana takes issue only with what it belatedly claims are costs of the searches.

Riviana asserted boilerplate objections when it responded to GXO's discovery requests on October 7, 2024, but did not argue that the searches would be prohibitively expensive or provide any evidence regarding the cost burden of such searches. ECF 267 at 12-14 (citing cases). Nor did Riviana raise this issue in supplemental discovery responses, joint status reports filed in December 2024 and January 2025 (ECF 272, 276, and 281), or at the Jan. 21, 2025 hearing. The Court has already ruled that Riviana is to produce additional documents, and Riviana can no longer raise new arguments that it did not previously assert so that GXO could respond to them and the Court could consider them before ruling.[2] *Hayse v. City of Melvindale*, 2018 WL 11176493 (E.D. Mich. Apr. 10, 2018) at *6-7 (objecting party that does not "submit affidavits or other evidence to substantiate its objections" that the cost of discovery would be unduly burdensome waives that argument); *Gray v. Bank of Am. Nat'l Ass'n*, 2010 WL 11887276 (N.D. Cal. Apr. 12, 2010) at *9-10 (failure to argue that costs of discovery were burdensome or document anticipated costs until after Court ruled on motion to compel likely waived those

---

[1] As the Court will recall, at the Jan. 21, 2025 hearing, GXO raised the issue of a further production by the "Cargo Underwriters." Whether that issue will need to be raised to the Court will depend upon the completeness of the further production to be made by Riviana.

[2] Because Riviana did not previously raise these issues, GXO did not have a full opportunity to brief them before the Court granted GXO's motion to compel. This summary summarizes GXO's position. GXO can submit additional briefing on these new issues if it would be helpful to the Court.

arguments). Nor has Riviana provided any substantiation for its belated assertion that searches would cost $250,000 to $350,000, which is not credible in light of the scope and limited number of custodians.

Riviana has not presented any basis for cost-shifting even if Riviana has not waived the issue (which it has). "[T]he responding party bears the costs of complying with discovery requests." *Clean Harbors Envt'l Servs. Inc. v. ESIS, Inc.*, 2011 WL 1897213, *2 (N.D. Ill. May 17, 2011). "Cost shifting has been found to potentially be appropriate only when 'inaccessible data is sought,' such as with backup tapes." *Id.* (quoting *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 284 (S.D.N.Y. 2003)). Cost shifting has been denied where the "[p]laintiff has not developed any arguments . . . that [a] search for responsive ESI will be extraordinary or that there is good cause for shifting the financial burden to Defendants." *Crandall v. 4Demand, LLC*, 2020 WL 11191816, *2 (N.D. Ill. June 15, 2020); *U.S. EEOC v. Dolgencorp, LLC*, 2014 WL 3734361, *3 (N.D. Ill. July 29, 2014) (denying cost shifting where responding party "[did] not argue that the requested information is inaccessible."). Riviana has not asserted that any data the Court ordered Riviana to produce is "inaccessible" or that there is anything "extraordinary" about conducting the routine searches the Court has ordered.

Riviana's contention that Section 4.1 of the parties' Materials Handling Services Agreement ("MHSA") (ECF 21-1) obligates GXO to pay Riviana's costs of discovery (another new argument never previously asserted) is without merit. Section 4.1 states that GXO shall "indemnify, defend and hold harmless" Riviana with respect to lawsuits by third parties. It does not apply here, where Riviana has sued GXO directly. Under applicable Pennsylvania law, language stating that one party will "indemnify, defend and hold harmless" the other party indicates that the provision applies only to third party claims. *Norristown On-Site, Inc. v. Reg'l Indus., L.L.C.*, 2020 WL 4592745, *8-9 (E.D. Pa. Aug. 10, 2020) ("only sensible reading" of provision to "indemnify" and "hold harmless" is that it applies only to third party claims); *Kellers Sys., Inc. v. Transp. Int'l Pool, Inc.*, 172 F. Supp. 2d 992, 998-99 (N.D. Ill. 2001) (under Pennsylvania law, applying indemnity clause to first-party claims is inappropriate "fee-shifting" because

such provisions are limited to third-party claims). Even if Riviana could seek to eventually recover its costs under Section 4.1 at the end of this litigation, that does not justify shifting costs now, in the middle of discovery.

### III. Riviana's Position

Riviana has neither the bandwidth nor expertise to perform the expanded searches efficiently and thoroughly, and it will require the services of a third-party e-discovery vendor. It is Riviana's position that its initial responses to GXO's discovery demands were more than adequate for the purposes of discovery on the limited issue of Riviana's damages. However, as the Court determined on January 21, 2025 that a more expansive search is appropriate, Riviana has determined that such a search, in compliance with the Court's directives, is beyond the capabilities of Riviana's internal personnel and that a third-party vendor is necessary to ensure that the searches are performed in an efficient, thorough and defensible manner, as Riviana does not want to potentially have to repeat the exercise or open itself to any form of sanctions and/or liability in that regard.

Riviana's IT team has worked with its vendor (BlueStar) over the past week or so to complete the data collection and searches using the mandated search terms. Riviana should be receiving the number of 'hits' per custodian and a cost estimate from BlueStar very soon (a few days to a week, approximately). Riviana hoped to have this data prior to the due date for this Joint Status Report.

The issue of cost was never raised because Riviana and Barbuss conducted good faith searches of relevant custodians' emails using its own personnel in the belief that the information provided was more than sufficient to substantiate Riviana's damages and provide comprehensive responses to GXO's extremely broad demands. The Court's ruling on January 21, 2025 disagreed with Riviana's position and thus changed the calculus. Accordingly, this more forensic search for documents, documents that may or may not exist, will be costly.

As for the issue of fee shifting, this is not an issue at all as, under the governing contract between GXO and Riviana, the Materials Handling Service Agreement ("MHSA"), GXO is contractually obligated to pay attorney's fees and disbursements. *See* Dkt. 188-3, at §4.1(a), which states:

(a) [GXO] shall indemnify, defend and hold harmless . . . Riviana, [its] parent and affiliated companies, and the directors, officers, employees, agents, contractors, and the successors and/or assigns of all of them, from and against any and all claims, losses, costs, liabilities, interest, expenses and actions at law or in equity (including fines, penalties, **and reasonable attorney's fees and disbursements**), including but not limited to injury to persons (including death) or damage to property... arising out of or resulting from the breach of this Agreement by, or willful misconduct or negligent acts or omissions of, [GXO], its agents, employees or contractors....

*Id.*, emphasis added.

If these materials (which GXO cannot adequately identify and which may or may not exist) are so necessary to GXO's defense of this action, then GXO should have no issue honoring its contractual obligation to pay for the search of same.

Riviana reserves the right to move for a protective order in this action.

*/s/ Lawrence C. Glynn*
Lawrence C. Glynn
CARUSO GLYNN, LLC
242-03 Northern Boulevard
Suite 201
Little Neck, New York 11362
(718) 819-8668
(718) 767-2474 Fax
lglynn@carusoglynn.com

Karl W. Roth
William P. Foley
ROTH LAW GROUP LLC
150 N. Michigan Ave.
Suite 800
Chicago, Illinois 60601

*/s/ Lawrence C. Friedman*
Lawrence C. Friedman, IL – 06192019
Allison N. Manger, IL – 6295220
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000
(314) 552-7000 Fax
lfriedman@thompsoncoburn.com
amanger@thompsoncoburn.com

Jeffrey N. Brown – *pro hac vice*
THOMPSON COBURN LLP
10100 Santa Monica Boulevard
Suite 500
Los Angeles, California 90067

| | |
|---|---|
| (312) 419-9599 | (310) 282-9418 |
| kwr@rothlawgroup.com | (310) 282-2501 Fax |
| wpf@rothlawgroup.com | jbrown@thompsoncoburn.com |
| | |
| *Attorneys for Plaintiff Riviana Foods, Inc.* | *Attorneys for Defendant/Third Party Plaintiff GXO Warehouse Company, Inc.* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2025 a true and correct copy of the foregoing was filed and served via the Court's electronic notification system on all parties of record.

*/s/ Lawrence C. Friedman*