**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RIVIANA FOODS, INC.,<br>*Plaintiff*,<br>v.<br>GXO WAREHOUSE COMPANY, INC.,<br>*Defendant/Third-Party Plaintiff* | Cause No. 1:18-cv-06550<br>Judge Martha M. Pacold<br>Magistrate Judge Jeannice W. Appenteng |

**JOINT STATUS REPORT REGARDING DAMAGES DISCOVERY**

In response to the Court's February 10, 2025 Docket Entry (ECF 286), Plaintiff Riviana Foods, Inc. ("Riviana") and Defendant/Third-Party Plaintiff GXO Warehouse Company, Inc. f/k/a Jacobson Warehouse Company, Inc. ("GXO") submit this Joint Status Report regarding (1) whether Riviana can claw back a certain email attached hereto as Ex. 1 that was sent on August 14, 2018 by Carmen Haworth, at that time Riviana's Assistant General Counsel, to Dawn Spreeman, Managing Director of Aon Risk Services Southwest, Inc., the overseas broker for Aon UK Limited, Riviana's insurance broker ("Aon") (the "E-mail"); and (2) the parties' updated positions on Riviana's document search. Section I sets forth the parties' positions on whether the email can be clawed back. Section II sets forth the parties' updated positions regarding Riviana's document search. Riviana has declined to file a motion to seal with respect to this joint status report or the E-mail, and, thus, with Riviana's permission, GXO is filing both publicly via ECF.

**I. E-mail Clawback**

Riviana produced the E-mail in discovery and now seeks to claw it back. In accordance with Rule 26(b)(5)(B), GXO's counsel sequestered the E-mail and did not disclose it to their client or attempt to use it in any prior court filing or for any purpose other than to evaluate whether to contest Riviana's requested clawback.

**A. GXO's Position**

The E-mail is not protected work product. First, the fact that Riviana's in-house counsel wrote the E-mail does not in and of itself make the document work product. "[N]ot everything created by an attorney is protected work product." *SEC v. RPM Int'l, Inc.*, 2020 WL 13158303, *3 (D.D.C. Mar. 5, 2020). "Just because a document is produced by an attorney, or the attorney is copied on an email, does not mean it is protected under the work product privilege." *Cardinal Square, LLC v. QBE Specialty Ins. Co.*, 2023 WL 8471849, *2 (S.D. Ind. Dec. 7, 2023).

Rather, for a communication from a lawyer to be work product, "the primary motivating purpose behind the creation of [the] document . . . [must be] to aid in possible future litigation." *Charvat v. Valente*, 82 F. Supp. 3d 713, 719 (N.D. Ill. 2015) (citation omitted). "[C]ommunications that concern only business matters are not subject to attorney-client privilege or work-product protections." *Id.* "[T]he attorney-client privilege and work-product immunity don't attach to documents and communications exchanged for business purposes." *ANGEL Learning, Inc. v. Houghton Mifflin Harcourt Publishing Co.*, 2010 WL 11561734 (S.D. Ind. Jan. 27, 2010), at *2 (emphasis added).

The E-mail is a business communication that is not protected by the work product doctrine. It was sent to Ms. Spreeman at Aon (Riviana's insurance broker) and evaluates whether a subrogation claim should be pursued against GXO. This is part of the typical and ordinary evaluation by an insurance company of whether to pursue a subrogation action. The E-mail makes it clear that Ms. Haworth was evaluating the issue from a business standpoint, addressing concerns over whether pursuing the subrogation claim would harm Riviana's ongoing business relationship with GXO. She was not aiding in the litigation against GXO. Rather, she was expressing concern about a business issue. The E-mail therefore is not protected.

There are additional reasons why the E-mail is not work product. As noted, Aon was Riviana's insurance broker, not its insurer. Even assuming communications with a *broker* could implicate the work product privilege, "an insurance company's investigation undertaken to determine whether there is coverage…is not undertaken in anticipation of litigation." *Slaven v. Great Am. Ins. Co.*, 83 F. Supp. 3d 789, 795-96 (N.D. Ill. 2015). Further, an

investigation into "whether a subrogation claim could be pursued" is not considered work product prepared in anticipation of litigation. *Id*. In *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 2014 WL 7360049 (S.D. Ind. Dec. 23, 2014), the Magistrate held that an insurer was required to produce documents regarding its subrogation investigation, rejecting the argument that the documents were attorney work product. *Id.* at *3. That court found that the investigation reflected "the typical and ordinary evaluation of whether the insurer has any subrogation interest to pursue." *Id. See also Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 2015 WL 1013952, *4-6 (S.D. Ind. Mar. 9, 2015) (overruling insurer's objections to Magistrate order that insurer produce documents related to subrogation investigation).

The fact that the E-mail was written approximately three weeks after Riviana filed suit does not change the analysis. "It is the very nature of an insurer's business to investigate and evaluate the claims of its insured, and the fact that the investigation and evaluation continues after litigation commences is not conclusive proof that material has been created to aid in that litigation." *Baxter Int'l, Inc. v. AXA Versicherung*, 320 F.R.D. 158, 165 (N.D. Ill. 2017) (citation omitted). For these reasons, the E-mail is not work product and should not be clawed back.[1]

**B. <u>Riviana's Position</u>**

The email at issue is from Carmen Haworth, former assistant general counsel for Riviana,[2] to Dawn Spreeman of Aon, the insurance broker (conduit) between Riviana and the multiple underwriters on the policy. It is dated August 14, 2018 and was sent approximately three weeks after the commencement of this litigation.[3] The email was unintentionally sent as part of Riviana's rolling disclosure to GXO in December 2024. The undersigned personally scanned the document, redacted the privileged portion and provided the labels "Redacted - AWP, AC,

---

[1] Riviana argues that GXO has not demonstrated "substantial need" for the document. That standard, however, applies where the document actually is work product. *See Minnesota Sch. Bds. Ass'n Ins. Trust v. Employers Ins. Co. of Wasau*, 183 F.R.D. 627, 630 & n.3 (N.D. Il. 1999). Here, the document is not work product.

[2] No longer employed by Riviana.

[3] The Complaint was filed in the Southern District of New York on July 26, 2018.

AOL." Only later was it revealed that an unredacted version of the email was actually produced. Counsel for GXO, Allison Manger, inquired of the undersigned via email if Riviana intended to produce the email and the undersigned responded in the negative. The subject email is protected from disclosure as "ordinary" work-product under Fed. R. Civ. P. 26 for at least three reasons. First, the email is ordinary work-product as it was created in anticipation of litigation (approximately 3 weeks after suit was commenced). Second, the email is precisely the sort of materials that the work product doctrine seeks to protect from disclosure. Third, GXO has made no showing of substantial need for the email. *See, e.g., Minnesota Sch. Boards Ass'n Ins. Tr. v. Emps. Ins. Co. of Wausau*, 183 F.R.D. 627, 630–31 (N.D. Ill. 1999) at FN 3. To this third factor, it is notable that Judge Pachold has allowed the parties to conduct discovery related to *damages only*. The email at issue has nothing to do with damages. Accordingly, GXO cannot demonstrate substantial need.

The subject email is further protected, and absolutely so, as "opinion" work-product - - even where undue hardship exists.[4] *Id.* citing *Ziemack v. Centel Corp.*, 1995 WL 314526 (N.D.Ill.1995) (quoting *Nye v. Sage Products, Inc.*, 98 F.R.D. 452, 454 (N.D.Ill.1982)).

## II. Riviana's Document Search

### A. Riviana's Summary of Estimated Costs[5]

On January 21, 2025, the Court ordered that Riviana's search terms were insufficient to discover relevant damages information. *See* ECF No. 282. To comply with the Court's order, Riviana engaged a third-party e-discovery specialist, BlueStar Case Solutions Inc. ("BlueStar"), to assist in the identification, collection, processing, hosting, and production of GXO's requested discovery. Specifically, Riviana identified repositories of potentially responsive documents, which included both "active" and "archived" data sources. Riviana then applied GXO's

[4] GXO has demonstrated no undue hardship.

[5] Riviana requested that this be made a separate section. Riviana's position is that treating this as a separate section is in accordance with the Court's minute entry dated February 10, 2025. GXO's position is that the minute entry ordered each party to limit its discussion of the document search issue to two pages, rather than allowing Riviana a second section. *See* ECF 286.

search terms to those data sources and exported the results to BlueStar, which results are summarized in the following chart:

| Type | Total |
|---|---|
| Entities | 8184 |
| Combined Custodians | 3740 |
| Combined Custodians-Unindexed | 13228 |
| New World Pasta | 15574 |
| Michael Bunker-Email Field | 3951 |
| **Combined Total** | **44677** |

The Combined Total 44,677 represents the number of emails with at least one search term hit. Importantly, the Combined Total does not include attachments, which will increase the total number of documents implicated by GXO's proposed discovery. As of the date of this Joint Status Report, none of the exported documents have been processed for hosting and review in light of the Court's consideration of Riviana's request that GXO bear the extraordinary costs of its proposed discovery.

Processing the documents will cost between $21,314.00 - $22,484.00, with the variance attributable to the amount of technician time required. Once the documents are processed, they will need to be hosted in an electronic review database. The cost for hosting the processed documents will be $3,144/month, which totals $37,728/year. After the documents are loaded into a review database, Riviana will review the documents for relevance and privilege. An experienced reviewer can review approximately 40-45 documents/hour, and therefore Riviana estimates that it will take approximately 1,000 hours to review the proposed data set (which does not include email attachments). At $450/hour, that equates to $450,000 of attorney review time, which is independent of any time to troubleshoot issues that arise, create a privilege log, or to conduct any quality control review. That figure also excludes any production costs (e.g., Bates stamping, exporting from the database, etc.). Thus, GXO's proposed discovery will cost well in excess of $500,000.00 and will take up 1,000+ hours of attorney review time.

**B. <u>GXO's Position</u>**

Riviana should continue to bear its own costs for searches. First, for reasons previously briefed (ECF 285 at 6-7), Riviana's tactical decision not to assert that the searches would be prohibitively expensive or provide evidence regarding the cost burden for 3 ½ months, and not until after the Court ruled on GXO's motion to compel, waived any argument on this point.[6] Moreover, the factors outlined in *Wiginton v. CB Richard Ellis, Inc.,* 229 F.R.D. 568 (N.D. Ill. 2004) all weigh against cost shifting. "The presumption is . . . that the responding party pays for discovery," so Riviana has the "burden to prove that the factors weigh in favor of shifting costs." *Id.* at 575 n.16. "[T]he more likely it is that the search will discover critical information, the fairer it is to have the responding party search at its own expense." *Id.* at 572. A responding party that, like Riviana, does not offer support "to substantiate its cost-allocation request," does not satisfy its burden. *Bilek v. Fed. Ins. Co.,* 344 F.R.D. 484, 495-96 (N.D. Ill. 2023).

The "likelihood of discovering critical information," does not support cost-shifting because GXO's document "request[s] appear[ ] to be specifically tailored to discover relevant information." *Wiginton*, 229 F.R.D. at 573. Judge Pacold already ruled that GXO may discover relevant and material information about Riviana's damages and its underwriters' subrogation claims. ECF 228.2 at 41:19-42:2; ECF 221. The searches include custodians who were directly involved in assessing Riviana's damages and Riviana's communications with third parties about its damages. The list of search terms (*see* ECF 285 at 1-4) is not overly lengthy, and GXO has agreed that Riviana need not use certain terms with some custodians. Further, Riviana did not suggest an alternative set of terms and custodians in the joint report filed after the hearing. ECF 285. Riviana has already searched many of the terms with at least one custodian, confirming that these terms will yield critical information.[7]

---

[6] GXO has demonstrated that Section 4.1 of the MHSA does not authorize cost-shifting in litigation. ECF 285 at 7-8. Riviana does not make any additional arguments in response.

[7] For similar reasons, "the importance of the issues at stake in the litigation," 229 F.R.D. at 573, does not favor cost shifting because the issues are important business concerns for both parties. "[T]he importance of the requested discovery in resolving the issues at stake in the litigation," *id.*, weighs against cost shifting, because this discovery is targeted specifically at documents related to Riviana's damages and the underwriters' subrogation claims. *See* ECF 228.2 at 41:19-42:2; *see also* ECF 221. And "the relative benefits to the parties of obtaining the information," 229 F.R.D. at 573, does not weigh in favor of cost shifting,

"[T]he amount in controversy compared to the total cost of production," 229 F.R.D. at 573, does not support cost-shifting.[8] Riviana did not provide GXO with its cost estimates or the purported bases for those alleged costs that Riviana promised on Feb. 1 (ECF 285 at 5) until 5 p.m. on Feb. 14, the last business day before this joint statement was due. Those tactics gave GXO insufficient time to fully analyze and address whether Riviana's dubious cost estimates are realistic. Because Riviana is seeking to foreclose GXO from pursuing relevant discovery based on what appears to be highly incredible cost figures, GXO respectfully requests until tomorrow (Feb. 19) to submit an affidavit with a more detailed analysis of Riviana's cost estimate.[9] To cite one example, Riviana has not explained which search terms or which custodians' files cause the large number of "hits."[10] These tactics prevent the Court or GXO from evaluating possible modifications.[11]

Most of Riviana's cost estimate ($450,000, or about 13% of Riviana's $3.5 million claimed damages) is for privilege review based on individual attorney review of 44,677 documents.[12] As discussed above, Riviana has

---

because both parties benefit from having a complete picture of the bases for Riviana's damages and the subrogation situation. The "availability of [requested] information from other sources," *id.*, also weighs against cost shifting because GXO does not have access to the information from any other source. Regardless of GXO having access to warehouse databases, it does not have access to Riviana's internal communications and calculations of damages. Further, Riviana is the plaintiff in this case and should not be permitted to require GXO to try to seek Riviana's communications with third parties from non-parties, or from Exeter, from whom discovery is stayed. "[T]he parties' resources as compared to the total cost of production," *Wiginton,* 277 F.R.D. at 573, also does not weigh in favor of cost shifting because, as Riviana admits, Riviana and GXO are both large corporations. "[T]he relative ability of each party to control costs and its incentive to do so," *Wiginton,* 277 F.R.D. at 573, weighs heavily against cost shifting. As discussed above, Riviana can take steps to control the costs of searching its own files, and GXO has negotiated to limit searches that would yield what Riviana considers a large number of documents.

8 Riviana seeks approximately $3.5 million in damages, and asserts that the amount will increase over time. ECF 268-6 at 6; ECF 188 at 2-3.

9 Allowing GXO to address estimates in an affidavit is also appropriate because, combining its two sections, Riviana has submitted 3 pages regarding its position on document production, rather than 2 pages, as the Court ordered. ECF 286.

10 Nor are the estimates credible on their face. Riviana previously searched 3 custodians with up to 14 search terms. Those searches produced approximately 600 pages (approximately 70 documents). GXO is only requesting using a maximum of 33 search terms for the 3 custodians that were not previously used, as well as with an additional 5 custodians, if their files are available, along with searches for communications with third party entities. ECF 285 at 1-5. It is not credible that this marginal increase in custodians and will generate the number of documents or costs Riviana claims.

11 Additionally, Riviana states that its calculations are based on both "active" and "archived" data sources. It has not explained what those "archived" sources are, which custodians are involved, or which time frames, which further weighs against cost-shifting. *See Wiginton*, 229 F.R.D. at 572.

12 Riviana compares $500,000 in estimated costs to $38,212 that Riviana appears to think is in question. The amount in controversy, however, is Riviana's damages claim, and Judge Pacold already said discovery on damages is allowed.

provided no basis for asserting that the searches would actually generate anything close to that number. And Riviana "may . . . employ cost-saving measures, such as performing a key word search for a privilege review rather than examining each document." *Wiginton,* 229 F.R.D. at 576. The rest of Riviana's claimed costs (processing fees of about $22,000 and hosting fees of about $38,000) are, respectively, about 0.6% and 1% of Riviana's claimed damages.

### C. Riviana's Position

GXO Warehouse Company, Inc. ("GXO") is seeking voluminous document discovery that exceeds by orders of magnitude any measure of proportionality to the only issue left in this case, the determination of damages, and therefore GXO should bear the costs required to produce the documents GXO is demanding. *See Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 573 (N.D. Ill. 2004) (articulating eight cost-shifting factors).

The first *Wiginton* factor considers the likelihood of discovering critical information and favors Riviana. *Id.* at 573. Until Riviana incurs over $500,000 dollars to process, host, review, and produce the documents implicated by GXO's requests, it is impossible to provide the Court with the exact percentage of documents containing critical information versus total documents returned by GXO's proposed discovery. However, "[w]hen the matter is initially brought to the court's attention, the extent to which the request appears to be specifically tailored to discover relevant information may help the court weigh this factor." *Id.* at 573. Here, "relevant information" is limited to Riviana's damages as set forth in a third-party surveyor's loss report (the "Report"), which added up volume and price information regarding the inventory that was lost in the fire. Despite this narrow ambit, GXO is insisting that Riviana apply 40 search terms to its custodians and search its communications with twenty-six entities. (Status Rep. 1-4, ECF No. 285.) Instead of targeting specific disputed facts in the Report, GXO insisted that Riviana use broad terms such as "insurance," "warehouse," and "survey," which returned 44,677 documents and plainly demonstrates that GXO's request are not specifically tailored to discover relevant information. Thus, the first *Wiginton* factor is in Riviana's favor.

The second factor considers the availability of such information from other sources. *Wiginton*, 229 F.R.D. at 574. This second factor favors Riviana for two reasons. First, as warehouse manager, GXO maintained the database from which the majority of loss information was derived, thus making GXO the best source for the majority of facts related to Riviana's damages. Second, to the extent GXO seeks to challenge whatever loss-related facts are outside its possession, GXO is suing third-party defendant Exeter, which is an entity included as GXO search terms. GXO already has access to the majority of loss-related facts, and other parties are more proper sources for their communications regarding the loss resulting from the fire. Thus, the second factor is in Riviana's favor.

The third factor compares the total cost of production to the amount in controversy. *Id.* at 575. It will cost over $500,000.00 for Riviana to provide GXO with the documents it is requesting. When compared to the $38,212 of destroyed inventory not captured in GXO's database,[13] it is apparent that the cost of the requested discovery far outweighs what GXO could reasonably challenge in the Report. The third factor is in Riviana's favor.

The fourth factor, the parties' resources, as compared to the total cost of production, is neutral because both parties are large corporations. *Id.* at 575-76.

GXO's insistence on broad search terms pushes the fifth factor - the parties' ability to control costs and its incentive to do so - in Riviana's favor. *Id.* at 576.

The sixth factor is neutral because there is no major public policy at issue. *Id.*

As GXO has yet to articulate any basis for challenging the Report, the seventh factor, which considers the importance of the requested discovery in resolving the issues at stake, is in Riviana's favor. *Id.* at 576-77.

The eighth factor is neutral; it is not clear which party will benefit. *Id.* at 577.

---

13 GXO has repeatedly failed to provide any theory for why the losses identified in the Report should be reduced. Riviana therefore presumes that GXO intends to dispute $38,212 of destroyed product which GXO tacitly admits was in the warehouse at the time of the fire but was not listed in GXO's database.

*/s/ Lawrence C. Glynn*
Lawrence C. Glynn
CARUSO GLYNN, LLC
242-03 Northern Boulevard
Suite 201
Little Neck, New York 11362
(718) 819-8668
(718) 767-2474 Fax
lglynn@carusoglynn.com

Karl W. Roth
William P. Foley
ROTH LAW GROUP LLC
150 N. Michigan Ave.
Suite 800
Chicago, Illinois 60601
(312) 419-9599
kwr@rothlawgroup.com
wpf@rothlawgroup.com

*Attorneys for Plaintiff Riviana Foods, Inc.*

*/s/ Lawrence C. Friedman*
Lawrence C. Friedman, IL – 06192019
Allison N. Manger, IL – 6295220
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000
(314) 552-7000 Fax
lfriedman@thompsoncoburn.com
amanger@thompsoncoburn.com

Jeffrey N. Brown – *pro hac vice*
THOMPSON COBURN LLP
10100 Santa Monica Boulevard
Suite 500
Los Angeles, California 90067
(310) 282-9418
(310) 282-2501 Fax
jbrown@thompsoncoburn.com

*Attorneys for Defendant/Third Party Plaintiff GXO Warehouse Company, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2025 a true and correct copy of the foregoing was filed and served via the Court's electronic notification system on all parties of record.

*/s/ Lawrence C. Friedman*