**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RIVIANA FOODS, INC., *Plaintiff*, v. GXO WAREHOUSE COMPANY, INC., *Defendant/Third-Party Plaintiff* | Cause No. 1:18-cv-06550<br><br>Judge Martha M. Pacold<br><br>Magistrate Judge Jeannice W. Appenteng |

**JOINT STATUS REPORT REGARDING DAMAGES DISCOVERY**

In response to the Court's April 11, 2025 Docket Entry (ECF 298), Plaintiff Riviana Foods, Inc. ("Riviana") and Defendant/Third-Party Plaintiff GXO Warehouse Company, Inc. f/k/a Jacobson Warehouse Company, Inc. ("GXO") submit this Joint Status Report regarding (1) what additional damages discovery has been completed, (2) what discovery remains, and (3) whether any disputes require the Court's attention. The Court's Docket Entry requested this Joint Status Report to be submitted by June 27, 2025. GXO and Riviana are submitting this Report at this time because, among other reasons, they are requesting an extension of the current discovery deadlines, one of which is currently set for June 24, 2025. GXO's and Riviana's request to extend the deadlines is being submitted by a separate Joint Motion. This Joint Status Report also discusses (in Section III) two issues that require the Court's attention.

**I.     Additional Damages Discovery That Has Taken Place**

Since the Court's April 11 order, GXO has continued to pursue document discovery. GXO's counsel and Riviana's counsel spent several weeks in April and May negotiating search terms and other parameters that Riviana would use for its document search. On May 13, 2025, the parties came to an agreement on search terms and parameters that, according to a hit report from Riviana, yielded 18,166

34239903

documents, including documents containing one or more search terms and that otherwise were within the agreed parameters, along with the "families" of those documents (attachments to emails and other such related documents).

Following that agreement, on May 22, 2025, Riviana produced 145 documents to GXO in pdf format. On May 30, 2025, counsel for the parties met and conferred via telephone call and agreed that Riviana would produce those 145 documents in native format to GXO via Relativity. GXO's counsel also raised the issue of whether Riviana had spent a reasonable amount of time reviewing the 18,166 documents identified by the search in order to determine that only 145 documents were responsive. The parties could not come to an agreement on that issue, which is addressed in Section III below.

In addition to Riviana's document production, GXO has also followed up on document requests served on Aon Risk Services Central, Inc. ("Aon"), Riviana's insurance broker. GXO served a subpoena on Aon on January 29, 2025. On June 5, Counsel for Aon informed counsel for GXO that he anticipated that Aon would be ready to produce documents on June 9. After Aon produces documents, the parties will schedule a deposition of the designated Aon Rule 30(b)(6) witness(es).

GXO also served requests for production on Liberty Corporate Capital Limited, as sole corporate member of Syndicate 4472 at Lloyd's, 4472 Liberty Managing Agency Limited ("Liberty") and Syn1183 Talbot Underwriting Ltd ("Talbot"), the two of Riviana's "interested subrogated underwriters" ("Underwriters") who had claims agreement authority. Talbot produced documents on April 9, 2025. Liberty has not produced any documents, and that is a dispute the parties believe requires the Court's attention, as discussed in Section III below. Depositions for designated witnesses for Liberty and Talbot will be scheduled after the document productions are completed.

In the course of meet and confer discussions, counsel for GXO stated that, because of the delays in resolving the issue of Riviana's document production, as well as Aon's and Liberty's continued delay in producing documents, it would be necessary to ask the Court to extend the current discovery

deadlines. (Under the current deadlines, expert witness reports are due on June 24, and fact witness depositions are to be concluded by August 15.) Counsel for Riviana agreed that the deadlines should be extended, both for that reason and because he has a trial beginning on June 11 that he expects to last several weeks. The parties are separately submitting a Joint Motion to extend the current deadlines by 60 days.

## II. Discovery That Remains

Fact witness depositions of Riviana, Liberty, Talbot, Aon, Barbuss (NA) LLC ("Barbuss") (a company hired by Riviana's insurance broker and its underwriters to pursue recovery of Riviana's losses from the fire that is the subject of this litigation), and EIMC LLC ("EIMC") (the company that was hired by Aon and Riviana to survey the damage from the Fire) will be scheduled after Riviana, Aon, and Liberty complete their document productions. GXO served a notice for Riviana's Rule 30(b)(6) deposition on September 17, 2024, and it served an amended notice on January 28, 2025. It served subpoenas for Rule 30(b)(6) depositions for Aon and EIMC on January 29, 2025 and February 3, 2025, respectively. Mr. Glynn accepted service of GXO's subpoena for Barbuss's Rule 30(b)(6) deposition on January 30, 2025 (having previously informed GXO's counsel on November 13, 2024 that he represented Barbuss). On January 28, 2025, GXO served Rule 30(b)(6) deposition notices for Liberty and Talbot.

During a meet and confer call on March 6, 2025, Mr. Glynn informed GXO's counsel that Liberty and Talbot agreed to make available for deposition one or more witnesses pursuant to Rule 30(b)(6). On March 6, Riviana's counsel emailed to GXO's counsel the following list of the individuals who will be appearing as Rule 30(b)(6) witnesses for the referenced companies:

- Daniel Stenhouse for AON UK
- Rob Hawes for Liberty
- Anthony Simons for Talbot

- Tomás Appleyard for Barbuss
- Esteban Suarez for Barbuss
- Lisa Bedford for Riviana
- Tiina Ruhlandt for EIMC

Aon's counsel sent an email to GXO's counsel on April 1, 2025, stating that Aon will work with GXO to set a mutually agreeable date for Aon's Rule 30(b)(6) deposition. As discussed above, GXO is still waiting for Aon's document production, which counsel for Aon has advised GXO should be ready for production by June 9.

EIMC's counsel, Mark Robinson, agreed in emails dated March 13, 2025 and March 17, 2025, that EIMC would be producing Tiina Ruhlandt for deposition as EIMC's Rule 30(b)(6) witness. While the parties previously discussed dates for her deposition, GXO decided to wait for her deposition until document production is complete.

GXO intends to take all the noticed depositions listed above (as well as fact witness depositions and the deposition of any expert witness disclosed by Riviana) after document production is complete. For any witness located in the United States, GXO intends to depose the individual in person, and it will make a Zoom link available for any attorney who wishes to attend the deposition remotely. For witnesses located outside of the United States, GXO will either travel to depose the witness in person or will take the deposition remotely, and in either circumstance, a Zoom link will be provided for any attorney who wishes to attend the deposition remotely.

As discussed above, the parties are separately submitting a Joint Motion to extend the current discovery deadlines by 60 days so that there is sufficient time to complete the damages discovery after documents have been produced by Riviana, Aon, and Liberty.

### III. Disputes That Require the Court's Attention

#### A. Reasonableness of Riviana's Document Review to Determine Responsive Documents

##### 1. GXO's Position

As discussed in Section I above, GXO and Riviana reached an agreement on search terms and parameters for Riviana's document production on May 13, 2025. According to a hit report from Riviana, that search yielded 18,166 documents (which includes documents that contain one or more of the search terms and their families). On May 22, 2025, Riviana produced 145 documents to GXO in pdf format. Counsel for the parties then met and conferred via telephone on May 30, 2025 regarding (1) the number of documents produced (in light of the hit report having identified 18,166 documents) and (2) the format for the production. While the parties reached an agreement on the format for the production, they could not reach an agreement regarding the number of documents produced.

During a May 30 meet and confer call, GXO expressed concern about whether Riviana took reasonable steps to review potentially responsive documents and identify which documents were responsive to GXO's requests for production in light of the size of the review set (18,166 documents), the small number of documents produced (145), and the short period of time between May 13, when the parties agreed on search parameters, and the May 22 production of the 145 documents. Riviana's counsel stated that: (1) he personally reviewed each of the 18,166 documents between May 9 and May 22, 2025[1]; (2) he spent a total of 59 hours reviewing each of the 18,166 documents; (3) he was representing that he reviewed, on average, over 300 documents per hour; (4) his review rate ranged from 150 documents per hour at the low end to as many as 500 documents per hour; (5) he was able to

---

[1] During the time period between May 6, when Riviana produced the final hit report, and May 13, when the parties reached a final agreement on search parameters, there were continued negotiations over a discrete element of the production which involved a particular category of documents that was generating an inordinately large number of hits. Mr. Glynn indicated on May 9 that he was in the process of reviewing documents that the parties were already in agreement should be produced.

do this without relying on any electronic discovery aids, such as deduplication, e-mail threading, or active learning; and (6) that he would be willing to sign an affidavit attesting to these facts.[2]

GXO's counsel stated that GXO has serious concerns as to whether Riviana (through its counsel) spent sufficient time on the review to adequately identify responsive documents. GXO reiterated this position in a subsequent email, pointing out that a review of 500 documents per hour would mean that Riviana's counsel spent an average of less than eight seconds reviewing each document, including many documents with multiple pages. GXO does not believe that is sufficient time to meaningfully evaluate whether a document is relevant and responsive. The standard average document review rate in eDiscovery is approximately 40 documents per hour.

GXO proposed that if Riviana does not want to spend more time reviewing the review set, one solution to that issue would be that, in addition to producing the Relativity versions of the 145 documents Riviana had identified as responsive, Riviana could also produce, separately, the rest of the 18,166 documents (including families) that hit on the search terms so that GXO can identify relevant documents that may have been overlooked during Riviana's review.

In light of the lengthy and repeated delays caused by Riviana regarding its document production (discussed in more detail below), GXO requests that the Court order Riviana to produce to GXO via Relativity all 18,166 documents identified using the search terms and parameters agreed to by the parties, subject to the confidentiality provisions of the Protective Order in this case (ECF 260). Under this proposal, GXO would review the review set and identify which documents it believed were responsive. GXO would provide those documents to Riviana, and would not retain the rest of the review set. If Riviana believed that any of the documents identified by GXO were privileged and/or work product, Riviana would have the right pursuant to Rule 26(b)(5)(B) to seek to claw back the document, and GXO could oppose the clawback if GXO believed the document was not privileged. GXO would then keep only those non-privileged documents it determined were responsive during its review. (The

---

[2] Riviana's counsel also represented during the May 30 call that Riviana did not withhold any documents on the basis of privilege or work product.

parties used a similar approach when a clawback issue arose with respect to Riviana's initial production that was submitted to and decided by the Court. ECF 287).

While the above option is preferrable to avoid further delays in Riviana's document production, an alternative would be for Riviana to conduct a reasonable review of the 18,166 documents that would take an additional 225 hours, which would reflect an average review rate of approximately 80 documents per hour. That rate is double the industry standard of 40 documents per hour but GXO is proposing that rate in the interest of compromise on the issue of whether sufficient time is spent on each document to determine its responsiveness. GXO requests that if this alternative is implemented, Riviana should produce all responsive documents identified by this search no later than July 10, 2025.

Requiring Riviana to either produce all 18,166 documents or to conduct and complete a reasonable review by July 10 is warranted by Riviana's protracted delays in producing the documents the Court's Orders have previously required for at least the last five months. This conclusion is confirmed by a brief summary of the ways in which Riviana has delayed complying with the discovery ordered by the Court. On July 25, 2024, Judge Pacold ruled that Riviana had not submitted cognizable evidence of any damages with respect to Riviana's motion for summary judgment and ruled that GXO is entitled to discovery regarding Riviana's damages and Riviana's relationship with its alleged subrogated underwriters. ECF 221, ECF 228-2 at 41:19-42:2. GXO served document requests on Riviana in September 2024, which Riviana initially objected to before producing a limited number of documents and refusing to produce more. On January 21, 2025, this Court ruled that: (a) "plaintiff's limited set of search terms is insufficient to discover relevant damages information within plaintiff's possession, custody, or control;" (b) the parties were to "meet and confer about search terms and custodians sufficient to produce information about the extent of plaintiff's damages;" and (c) Riviana was to produce additional documents by February 28, 2025. *Id.*

That process was delayed because Riviana refused to discuss search terms unless the costs were shifted to GXO, requiring the parties to submit Joint Status Reports on that newly-raised issue on February 5, 2025 and February 18, 2025. ECF 285 and 287. On March 3, 2025, the Court ruled that there will be no cost shifting at this time and directed the parties to again negotiate search terms. ECF

289. GXO again immediately attempted to negotiate search terms with Riviana and requested a hit report so that search terms could be negotiated. Riviana did not provide a hit report for more than a month, until April 10, 2025. (Riviana did so only after GXO stated, after weeks of negotiation, that the issue would have to be submitted to the Court if Riviana refused to provide the hit report).

Having finally received the hit report, GXO could evaluate whether search terms could be narrowed in a way that would meaningfully reduce the number of documents for review, while still discovering relevant documents. GXO engaged in meet and confer discussions with Riviana for nearly a month (and over six rounds of hit reports). GXO agreed to narrow the searches significantly by combining search terms (particularly those with a large number of hits) with other terms and narrowing those combined search terms by also requiring a proximity search (i.e., that terms had to be within a certain number of words from each other). This narrowed the number of documents for review from 356,809 in the initial hit report produced by Riviana on April 10, 2025, to 18,166 documents using the search terms and parameters agreed to by the Parties on May 13, 2025.

With Riviana having finally agreed to search terms and parameters on May 13, after months of delay, GXO awaited the production. A mere nine days later, on May 22, 2025, Riviana produced only 145 documents. Riviana is taking the position that those 145 documents are the only responsive documents among the 18,166 documents identified using the search parameters agreed to by the parties. Riviana is taking that position based a single attorney's hasty, cursory review of an average of over 300 documents per hour, and as many as 500 documents per hour, which would amount to less than eight seconds of review time per document. This was not a reasonable review that was adequate to identify responsive documents.

Based on Riviana's prior attempts to: (a) obtain summary judgment without submitting any cognizable evidence of damages; (b) refuse to make more than a cursory production of documents until after the Court ruled that Riviana's document production was insufficient; (c) still refuse to search for and produce responsive documents unless the Court ordered GXO to pay Riviana's costs, which the Court then rejected; it appears that Riviana still sought to avoid incurring any costs of discovery by having its counsel (who states that he is working on a contingency fee basis), on his own, conduct a

cursory, rushed review of the documents. The result of these tactics has greatly prolonged a discovery process that should have concluded months ago. Riviana could have avoided further delay by, for example, using contract attorneys to review the documents in a more reasonable manner, which is common practice for electronic discovery. The average rate for a contract review attorney typically ranges from $35 to $175 per hour, depending on reviewer experience and complexity of review. Had Riviana hired contract review attorneys to review the 18,166 documents at a rate of 40 documents per hour (the industry standard) at a cost of $100 per hour (in the middle of the typical range), it would have incurred a total cost of $ 45,415 for document review. That would not have been an unreasonable expense in a case where Riviana is seeking more than $3.6 million in damages.

Given the repeated delays caused by Riviana, GXO's proposal that Riviana produce all 18,166 documents identified using the search terms and parameters agreed to by the parties, subject to the confidentiality agreement and clawback rights, is a reasonable solution to finally resolve this issue without further delays that are prejudicial to GXO and hindering the discovery process that the Court ordered nine months ago. Alternatively, the Court should order Riviana to conduct a reasonable review, spending at least 225 additional hours. That figure assumes a review rate of approximately 80 documents per hour, which is well above the industry standard of 40 documents per hour but which GXO is proposing in the interest of compromise. Assuming a rate of $100 per hour for contract review attorneys, that process would cost Riviana approximately $22,500, which is very reasonable in light of Riviana's $3.6 million damage claim. Under this alternative, Riviana should be ordered to complete its production of responsive documents by July 10.

    2.    <u>**Riviana's Position**</u>

The undersigned, Lawrence C. Glynn, counsel for Riviana and Underwriters, hereby swears and affirms under the penalty of perjury that I personally reviewed all 18,166 documents. Approximately 98% of those 18,166 documents (17,802.68) had **absolutely nothing to do with litigation**. Riviana is a large corporation with distribution centers across the country. Riviana suffered at least two other major casualties, both of which were much more severe than the loss at issue. One

situation involved a collapse of a storage silo. The other involved substantial losses at a warehouse affected by Hurricane Harvey. Any document related to either of these two casualties could be quickly discarded as non-responsive.

Another example of being able to quickly process documents was the nearly 1,000 certificates of insurance for each state in which Riviana does business, with over 50 such certificates for the State of Texas alone. Clicking through such documents and marking same as "unresponsive" on Relativity literally took 2-3 seconds, tops.

Of the approximately 2% of the 18,166 documents that were marginally related to this litigation, approximately 50% touched on the issue of Riviana's damages. Those documents were produced to GXO.

The conscious decision of counsel for GXO's to question the efficacy, effort and veracity of the undersigned in this joint status report is troubling, to say the least.

### B. Liberty's Failure to Produce Documents

#### 1. GXO's Position

In addition to the dispute above regarding Riviana's document production, the Parties are also at an impasse regarding Liberty's document production. GXO served document requests, together with a Rule 30(b)(6) deposition notice, to Liberty on January 28, 2025. Riviana's counsel, Larry Glynn, has represented that he is also counsel for Liberty, and he acknowledged receipt of those requests. GXO's counsel has repeatedly followed up with Mr. Glynn regarding the status of the Liberty document production. On March 21, 2025, Mr. Glynn informed GXO's counsel that he had scheduled a call with Liberty to discuss the documents. Later, on March 31, Mr. Glynn stated that he hoped to have Liberty's document production that week. On April 5, Mr. Glynn stated that he was still working on the Liberty production. On April 30, Mr. Glynn stated that he would "chase" Liberty for the production. On May 20, Mr. Glynn stated that he would continue to "press" Liberty for the documents.

GXO's counsel raised the issue of the Liberty document production during a meet and confer call with Mr. Glynn on May 30, 2025. During the call, Mr. Glynn confirmed that he represents Liberty, but he also stated that Liberty has not been responsive to his or Barbuss' attempts to contact Liberty regarding its document production.

Over four months have passed since GXO served Liberty with document requests, yet Liberty has not produced documents. In light of the passage of time and Liberty's failure to respond to attempts by its counsel and Barbuss to inquire about the status of its document production, GXO requests that the Court order Liberty to produce by June 30, 2025 responsive documents identified in GXO's Rule 30(b)(6) notice for Liberty so that the parties can move forward with depositions.

2. **Riviana's Position**

Riviana does not disagree with GXO's position on this issue.

/s/ Lawrence C. Glynn
Lawrence C. Glynn
CARUSO GLYNN, LLC
242-03 Northern Boulevard
Suite 201
Little Neck, New York 11362
(718) 819-8668
(718) 767-2474 Fax
lglynn@carusoglynn.com

*Attorneys for Plaintiff Riviana Foods, Inc.*

/s/ Lawrence C. Friedman
Lawrence C. Friedman, IL – 06192019
Allison N. Manger, IL – 6295220
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000
(314) 552-7000 Fax
lfriedman@thompsoncoburn.com
amanger@thompsoncoburn.com

Jeffrey N. Brown – *pro hac vice*
THOMPSON COBURN LLP
10100 Santa Monica Boulevard
Suite 500
Los Angeles, California 90067
(310) 282-9418
(310) 282-2501 Fax
jbrown@thompsoncoburn.com

*Attorneys for Defendant/Third Party Plaintiff GXO Warehouse Company, Inc.*

## CERTIFICATE OF SERVICE

    I hereby certify that on June 9, 2025 a true and correct copy of the foregoing was filed and served via the Court's electronic notification system on all parties of record.

                                                  /s/ Lawrence C. Friedman