**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RIVIANA FOODS, INC.,<br>*Plaintiff*,<br>v.<br>GXO WAREHOUSE COMPANY, INC.,<br>*Defendant/Third-Party Plaintiff* | Cause No. 1:18-cv-06550<br>Judge Martha M. Pacold<br>Magistrate Judge Jeannice W. Appenteng |

**AMENDED JOINT JURISDICTIONAL STATEMENT**

In response to the Court's June 18, 2025 Docket Entry (ECF 315), Plaintiff Riviana Foods, Inc. ("Riviana") and Defendant/Third-Party Plaintiff GXO Warehouse Company, Inc. f/k/a Jacobson Warehouse Company, Inc. ("GXO") submit this Amended Joint Jurisdictional Statement identifying all parties in interest to this lawsuit, along with their citizenship information. As the Court stated in the Docket Entry, at the status hearing on June 17, 2025, a question arose as to whether the "Interested Subrogated Underwriters" identified in the case caption in the Complaint (ECF 1) are parties to this lawsuit. *Id.* Counsel for Riviana and GXO agreed at the hearing that the Interested Subrogated Underwriters are parties. *Id.* However, the previous Joint Jurisdictional Statement (ECF 73) stated that the Interested Subrogated Underwriters are not parties. *Id.* Thus, Riviana and GXO submit this Amended Joint Jurisdictional Statement at the direction of the Court and in response to the Court's request for clarity. *Id.*

## I. Statement by Plaintiff Riviana Foods, Inc.

As of the date the Complaint was filed and currently, Plaintiff Riviana Foods, Inc. ("Riviana") was and is a corporation organized and existing under the laws of Delaware, with its principal place of business located in Houston, Texas.

The "Interested Subrogated Underwriters" referred to in Riviana's Complaint (ECF 1) include the following:

| | |
|---|---|
| **Liberty Corporate Capital Limited, as sole corporate member of Syndicate 4472 at Lloyd's**<br><br>4472 Liberty Managing Agency Limited | 20 Fenchurch Street<br>London<br>EC3M 3AW<br><br>Citizen of UK |
| Syn1183 Talbot Underwriting Ltd | 60 Threadneedle Street<br>London<br>EC2R 8HP<br><br>Citizen of UK |
| Syn2007 Novae Syndicate | 52 Lime Street<br>London<br>EC3M 7AF<br><br>Citizen of UK |
| Syn5000 Travelers Syndicate Management Limited | One Creechurch Place<br>Creechurch Lane<br>London EC3A 5AF<br><br>Citizen of UK |
| 1686 Axis Managing Agency Ltd | 52 Lime Street<br>London<br>EC3M 7AF<br><br>Citizen of UK |
| 2003 XL Catlin | 20 Gracechurch Street<br>London<br>EC3V 0BG |

| | |
|---|---|
| | Citizen of UK |
| Syn2987 Brit Syndicates Limited | The Leadenhall Building<br>122 Leadenhall Street<br>London EC3V 4AB<br><br>Citizen of UK |
| Syn3000 Markel Syndicate Management Limited | 20 Fenchurch Street<br>London<br>EC3M 3AZ<br><br>Citizen of UK |
| Syn1036 QBE Underwriting Ltd | 30 Fenchurch St<br>London<br>EC3M 3BD<br><br>Citizen of UK |
| 1955 Arch Managing Agency Limited | 60 Great Tower Street<br>London<br>EC3R 5AZ<br><br>Citizen of UK |
| Syn4444 Canopius Managing Agents Ltd | Floor 29<br>22 Bishopsgate<br>London EC2N 4BQ<br><br>Citizen of UK |
| 1200 Westfield Specialty Managing Agency Ltd | Camomile Court 23<br>Camomile Street London<br>EC3A 7LL<br><br>Citizen of UK |

The listed underwriters are interested parties only. They are not necessary parties to this action. Riviana Foods, Inc. retains a pecuniary interest in recovery of damages from the claims asserted in Plaintiff's Complaint and thus, under IL § 735 5/2-403(c), Plaintiff Riviana Foods, Inc. may bring and maintain this claim for contractual damages in its own name and for use of partial subrogees. *See Gadson v. Among Friends Adult Day Care, Inc.*, 215 IL Ap. (1st) 141967 ¶¶ 25 – 28 (2015). Accordingly, consistent with the Joint Jurisdictional Statement (ECF 73), filed on May 21, 2020, Interested Subrogated Underwriters are not parties to this action. The identity of Interested Subrogated

Underwriters arose in the context of a dispute regarding damages-related discovery, which has been resolved.

## II. Statement by Defendant/Third-Party Plaintiff GXO Warehouse Company, Inc.

**A. Citizenship of GXO.** As of the date the Complaint was filed and currently, Defendant/Counterclaim Plaintiff GXO Warehouse Company, Inc. ("GXO") was and is a corporation organized and existing under the laws of Iowa with its principal place of business located in High Point, North Carolina. GXO was formerly known as Jacobson Warehouse Company, Inc., d/b/a XPO Logistics Supply Chain but changed its name on August 2, 2021 via an amendment to its Articles of Incorporation. *See* ECF 119 at 2; ECF 120. The reference in Riviana's Complaint to GXO having its principal place of business in Connecticut (ECF 1 ¶ 2, p. 2) is incorrect. GXO pleaded its correct citizenship in its Third-Party Complaint against Exeter 25810 S. Ridgeland, LLC (ECF 21 ¶ 2, p. 2). The parties' Joint Initial Status Report (ECF 25, p.4) also states the correct citizenship of GXO.

**B. Status of Riviana's "Interested Subrogated Underwriters."** Riviana now concedes that it seeks in this lawsuit to obtain amounts that will reimburse its "Interested Subrogated Underwriters" ("Underwriters") for amounts the Underwriters already paid to Riviana. Its statement that, in these circumstances, the Underwriters are "not parties to this action" is contradicted by numerous statements Riviana previously made to this Court and to GXO.

Riviana's Complaint, filed on July 25, 2018, stated that Riviana was suing on behalf of itself and its "Interested Subrogated Underwriters." ECF 1. Riviana did not plead who the Underwriters were, what the basis was for the subrogation, or whether any of the (unidentified) Underwriters had in fact paid Riviana any amounts with respect to the damages Riviana was claiming from GXO in this lawsuit.

Riviana served Mandatory Initial Disclosures on May 29, 2019 (ECF 237-1) ("Disclosures"). The Disclosures did not identify who the Underwriters were, state that the Underwriters had reimbursed Riviana in whole or part for its claimed losses, or on what terms Riviana was reimbursed. If Riviana

was in fact reimbursed in whole or part by the Underwriters, Riviana was required pursuant to Rule 26(a) to disclose that the Underwriters had in fact reimbursed Riviana. That information should have been included in Riviana's Disclosures, or in a supplement if the reimbursements occurred after those Disclosures were first submitted. *E.g., Chipman v. A.I.G. Agency, Inc.*, No. 4:11 CV 117 DDN, 2013 WL 4517763, at *1 (E.D. Mo. Aug. 26, 2013) (ordering plaintiff pursuant to Rule 26(a) to update initial disclosures and provide related documentation she had not disclosed which may diminish her original computation of damages). *See also Sulaiman v. Biehl & Biehl, Inc.*, No. 15 C 04518, 2016 WL 5720476, at *8 (N.D. Ill. Sept. 30, 2016) (finding plaintiff failed to comply with initial disclosure rules by not disclosing details about damage calculations known to plaintiff).

As the Court noted in its June 18, 2025 Order (ECF 315), in the Joint Jurisdictional Statement filed on May 21, 2020 (ECF 73), Riviana stated that the Underwriters "are not parties to this action." That statement on the part of Riviana was consistent with the premise that the Underwriters had not reimbursed Riviana in whole or in part. As discussed below, Riviana did not inform the Court that the Underwriters had reimbursed Riviana until the summary judgment hearing on July 24, 2024.

In the briefing on Riviana's motion for summary judgment and GXO's cross-motion, GXO pointed out that Riviana had never identified the Underwriters, or stated whether they had reimbursed Riviana, and that such information was "critical because those entities may be the real parties in interest." ECF 205 at 17 (filed Feb. 6, 2023). *See also* ECF 208 at 3-4 (filed Feb. 6, 2023) (GXO denial of Riviana's statement that the Underwriters "sustained damage" because "Riviana has submitted no evidence as who 'its underwriters' are or why they are entitled to any recovery…[or] submitted any evidence as to whether the 'underwriters' have made any payment to Riviana with respect to the claimed loss."). When Riviana did not assert in response that the Underwriters had in fact reimbursed Riviana (or even identify the Underwriters), GXO stated in it Reply Brief filed March 22, 2023 that

> GXO's Combined Memorandum in Support (ECF 205 at pp. 21-24) pointed out that Riviana has never identified the "Interested Subrogated Underwriters" on whose behalf Riviana claims to be suing and who may have already reimbursed Riviana for some or all of its claimed losses. . . . Riviana has not contested any of these arguments, and therefore concedes them. *Humphries v. CBOCS W., Inc.*, 474 F.3d at 407; *Galvan v. Cmty. Unit Sch. Dist. No. #300*, 46 F. Supp. 3d at 841-42.
>
> Riviana also does not rebut, and therefore concedes, GXO's point (ECF 205 at p. 21) that Riviana's failure to identify the subrogated *insurers raises the prospect that Riviana is not the real party in interest*, thereby precluding Riviana from recovering. *See, e.g., Wadworth v. U.S. Postal Service*, 511 F.2d 64, 66-7 (7th Cir. 1975) (subrogated parties may be required to be joined as real parties in interest or risk dismissal).

ECF 216 at 14-15 (emphasis added).

Riviana did not dispute those assertions that GXO made in February 2023, or otherwise disclose that the (still unnamed) Underwriters had reimbursed Riviana, until the District Court's hearing on the cross-motions for summary judgment on July 25, 2024. At that hearing, Riviana's counsel stated for the first time that the (unnamed) Underwriters had in fact reimbursed Riviana, although he did not provide any details about the identities of the Underwriters, or the amounts or the basis for the reimbursements. ECF 228, at 5, 7.

At the same July 25, 2024 hearing on the cross-motions for summary judgment, the District Court recognized that Riviana had submitted no cognizable evidence of Riviana's damages or the identity of the Underwriters. That was one of the reasons the Court recognized when it denied Riviana's motion for summary judgment on the issue of damages and ordered the parties to pursue discovery on Riviana's damages:

> THE COURT: Okay. So I guess what I would be inclined to do today, it sounds like *there's a variety of damages-related issues*, such as the one that Mr. Friedman [GXO's counsel] mentioned that is about full -- the survey says full breakdown of costs to support loss calculations is enclosed with the report, and *such as this issue about what, if any, amounts has Riviana been paid by its insurers and what's the significance of that with respect to damages*, so I think for sure I cannot address summary judgment with respect to damages today.

ECF 228-2 at 41:19-42:2 (emphasis added). *See also* ECF 221, 230.

After Riviana's counsel admitted that Riviana had been reimbursed by the Underwriters, GXO filed, on September 12, 2024, an Opposed Motion to Modify Case Management Order and For Leave to File Amended Answer and Affirmative Defenses to add the additional affirmative defense that Riviana had not joined all of the real parties in interest to this lawsuit. ECF 237. The District Court has scheduled a hearing on that motion on July 9, 2025 (*see* ECF 302).

GXO also served discovery on Riviana asking Riviana to identify the Underwriters and provide information about how much Riviana was reimbursed. Riviana first provided that information on September 23, 2024 (ECF 246-1), listing each of the Underwriters that are listed in Section I hereto.

Since that disclosure, Riviana has repeatedly referred to the Underwriters as "parties" to this case, and as "Plaintiffs." In an e-mail exchange during meet and confer discussion regarding a discovery dispute about Riviana's delays in producing documents that the Court had ordered Riviana to produce, Riviana's counsel stated in a December 11, 2024 email that "The identity of each of the underwriters was provided months ago. *They are a party to this action."* Ex. A hereto (emphasis added). In another email sent around the same time, Riviana's counsel referred to "Riviana AND ITS INTERESTED SUBROGATED UNDERWRITERS WHO HAVE ALL BEEN IDENTIFIED *AND ARE A PARTY TO THIS ACTION."* Ex. B hereto (emphasis added).

Similarly, the parties' Joint Status Reports submitted on January 15, 2025 and March 4, 2025, refer to the Underwriters as "parties to this lawsuit" (ECF 281 at 5) or "parties to this case" (ECF 290 at 5).

At the June 17, 2025 hearing on the issue of compliance by Liberty (one of the Underwriters) with a deposition notice served by GXO, Riviana's counsel again represented that Liberty was a party and that he was representing Liberty:

> THE COURT…Mr. Glynn, it's your position as well that Liberty is a party in this case? Is that what your understanding is?

> MR. GLYNN: Yes, Your Honor. While me and Mr. Friedman may not agree on many things, we do agree that Liberty is, indeed, a party.
>
> THE COURT: Okay.
>
> MR. GLYNN: They are. They are a party. Mr. Friedman is *100 percent correct*. I may disagree with some of the nuance of what was said in Mr. Friedman's response, but at the end of the day, yes, *Liberty is a party*. *We do represent Liberty* with a little caveat, which is why Mr. Appleyard is also on this call to answer any further questions the Court may have.

Transcript (ECF 316) at 7-8 (emphasis added). The Court then entered its Minute Entry on June 18, 2025, asking the parties to file an amended jurisdictional statement identifying all parties in interest to this lawsuit and their "citizenship" information. ECF 315. On the same day as the hearing (June 17, 2025), Mr. Glynn entered his appearance as counsel of record for Liberty, which he identified as "*the Plaintiff herein.*" ECF 314 (emphasis added).

On June 19, 2025, Mr. Glynn sent GXO's counsel an email stating, "Responding to Magistrate Appenteng's Order dated June 18, 2025, for the Amended Jurisdictional Statement due on or before June 27, 2025, please include the following table for Plaintiffs' section," and he provided the table copied in Section I above. *See* Ex. C hereto. GXO then prepared a complete draft of the Amended Joint Jurisdictional statement and emailed it to Mr. Glynn on June 24, 2025, stating, "We incorporated the list of underwriters that you sent us.  Please not[e] that there is a placeholder for you to insert the type of entity for the underwriters." Ex. D hereto. GXO had added this placeholder because the Court requested "citizenship" information (ECF 315), and case law indicates that the method of determining citizenship of the Underwriters is dependent on the type of entity involved (*see* discussion below).

Approximately half an hour later on June 24, 2025, Mr. Glynn emailed GXO's counsel stating, "Upon further consideration of this issue, we are not in a position to amend the jurisdictional statement. The underwriters are not parties to this action. They are interested parties only." *See* Ex. E hereto.

About an hour later, still on June 24, 2025, Mr. Glynn purported to "terminate" Liberty on the docket, with no further explanation. (There currently is no ECF number associated with that docket entry.)

While Mr. Glynn did not explain his reasoning, his abrupt change in position, after informing the Court that it was "100 percent" correct that the Underwriters were parties, may be due to the fact that these Underwriters appear to be syndicates (*see* names on table in Section I above), and the Seventh Circuit has held that the citizenship of a syndicate depends on the citizenship of each of its members, similar to a partnership. *Indiana Gas Co., Inc. v. Home Ins. Co.*, 141 F.3d 314, 315-319 (7th Cir. 1998). *See also Montgomery v. Markel Int'l Ins. Co. Ltd.*, 259 F. Supp. 3d 857, 864-868 (N.D. Ill. 2017). Thus, for purposes of diversity jurisdiction, a syndicate, including a Lloyds of London syndicate such as the Underwriters here appear to be, must provide the citizenship of each of its members, so that a federal court can determine whether or not there is complete diversity. *Montgomery*, 259 F. Supp. 3d at 865-870. *See also Underwriters at Lloyd's, London v. Osting–Schwinn*, 613 F.3d 1079, 1085-91 (11th Cir. 2010); *Certain Underwriters at Lloyd's London v. Fid. & Cas. Ins. Co. of N.Y.*, 1999 WL 181997, *2 (N.D. Ill. Mar. 24, 1999).

Without the information that would establish complete diversity, the Court lacks subject matter jurisdiction, an issue that is not waivable and can become an issue for the first time late in the case or even on appeal, thus "imperil[ing] any judgment on the merits." *Montgomery*, 259 F. Supp. 3d at 868-70. Courts have recognized that Lloyd's syndicates similar to the Underwriters may have hundreds or even thousands of "Names" (i.e., members), which may include United States citizens. *Id.* at 868-69. *See also Indiana Gas*, 141 F.3d at 316. If any of those Names is a citizen of Iowa or North Carolina, subject matter jurisdiction would appear to be lacking here.

In the absence of any other explanation, it is logical to conclude that Riviana's abrupt change in position on whether the Underwriters are "plaintiffs" or "parties" is an attempt to circumvent this potentially fatal subject matter jurisdiction issue (which may also explain Riviana's long delays in

providing the information about the Underwriters that precluded GXO from identifying this issue until recently).

Whatever the tactical reason is that Riviana's counsel attempted to contradict his prior statements and entry of appearance which identified Liberty as a "Plaintiff," the facts admitted by Riviana at the July 24, 2024 summary judgment hearing and subsequent discovery responses show that the Underwriters are in fact real parties in interest to this lawsuit because the Underwriters seek to be reimbursed for the amounts they paid to Riviana. *E.g., Del Estado v. Navistar Int'l Transp. Corp.,* 132 F. Supp. 2d 624, 625-26 (N.D. Ill. 1999) (in analyzing a court's subject matter jurisdiction, "insurers' subrogation rights or partial subrogation rights render them real parties in interest"). *See also Pepsico Do Brasil, Ltda v. Oxy-Dry Corp.*, 534 F. Supp. 2d 846, 848 (N.D. Ill. 2008). *Del Estado* discusses an analogous situation where the role of Lloyds reinsurers in reimbursing the insured was not disclosed until the case had been pending for four years "and immediately set off alarm bells" because the information indicated that subject matter jurisdiction was lacking, and the Court had an obligation to address that issue now that it had arisen. 132 F. Supp. 2d at 625.

The Illinois statute and court decision cited by Riviana in Section I do not alter this conclusion for several reasons. First, in a diversity case, determining whether a party is a real party in interest is determined by Fed. R. Civ, P. 17, not state substantive law. Second, even if the Illinois statute were otherwise applicable, the statute (and the case cited by Riviana, *Gadson v. Among Friends Adult Day Care*, 2015 IL App. (1st) 141967 (2015)) discuss the res judicata effect (or lack thereof) on a subrogor of a prior decision in favor of a subrogee. Under 735 ILCS 5/2-403(d) and as reflected in *Gadson*, a judgment in favor of a subrogee (here, the Underwriters) might not have preclusive effect on a subrogor (in this case, Riviana) who was not completely reimbursed by the subrogee. That principle is irrelevant to the issues here. Similarly, 735 ILCS 5/2-403(c), also cited by Riviana, discusses procedures to be followed in Illinois state court to assert a subrogation claim (such as filing an affidavit or verified

complaint asserting the basis for the subrogation claim). Those procedures are not applicable here, and in any event Riviana did not follow them; for example, Riviana has never filed a Verified Complaint.[1]

In sum, despite Mr. Glynn's about-face on the issue, the Underwriters are real parties in interest to this litigation. Their citizenship must be considered in determining whether this Court has subject matter jurisdiction. *Indiana Gas*, 141 F.3d at 315-316; *Montgomery*, 259 F. Supp. 3d at 864-868. The burden is on the Underwriters to show, by a preponderance of the evidence, that they are diverse to GXO, *Osting-Schwin*, 613 F.3d at 1085-86. Presuming that the Underwriters are syndicates (as some of their names indicate—*see* chart in Section I above), that means providing citizenship information for each of their members. *Montgomery*, 259 F. Supp. 3d at 865-68. "[W]ithout knowledge of that citizenship, it [is] impossible to say that complete diversity exists." *Osting-Schwin*, 613 F.3d at 1092 (citation omitted).[2]

## III. <u>Statement re Third Party Defendant/Fourth Party Plaintiff Exeter 25810 S. Ridgeland, LLC</u>

As of the date the Complaint was filed and currently, Third Party Defendant/Fourth Party Plaintiff Exeter 25810 Ridgeland, LLC ("Exeter") was and is a Delaware limited liability company with its principal place of business in Conshohocken, Pennsylvania and was the owner of a distribution center at 25810 S. Ridgeland, Monee, Illinois ("Premises"). The sole member of Exeter is Exeter Operating Partnership III, L.P. ("EOP"), a limited partnership organized and existing under the laws of

---

[1] Beginning six months after this lawsuit was filed, GXO repeatedly pointed out at least five times that Riviana's Complaint was not verified although Riviana continued to insist that it was. *See* GXO filings on April 25, 2019 (ECF 23 at 1 n.1), July 2, 2020 (ECF 79 at 1 n.1), in the summary judgment briefing on February 6, 2023 (ECF 205 at 1, 7) and on March 22, 2023 (ECF 216 at 3-4), and GXO's Sept. 12, 2024 motion for leave to amend (ECF 238 at 2 n.1). In response, Riviana repeatedly insisted over the next five years that the Complaint was verified (*see, e.g.,* ECF 29 at 1; ECF 187 at 2-4; ECF 228-2 at 37:9-12). On October 17, 2024, Riviana finally admitted in a discovery response that the assertions it had made for five years about filing a verified complaint were not true. *See* ECF 268-7 at Answer to Interrogatory No. 15.

[2] As discussed in *Pepsico, supra*, where, as here, there is only partial subrogation, the citizenship of both subrogees and subrogors must be considered in determining whether there is complete diversity. 534 F. Supp. 2d at 848-49.

Delaware with its principal place of business located in Pennsylvania. The general partner of EOP is Exeter Operating Partnership III GP, LLC ("EOP GC"), a limited liability company organized and existing under the laws of Delaware with its principal place of business located in Pennsylvania. The sole member of EOP GC is Exeter Industrial REIT III LLC ("Exeter REIT"), a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business located in Pennsylvania. Under SEC Regulation D, 17 C.F.R. § 230.501 *et seq,* Exeter REIT is exempt from the registration requirements of the Securities Act of 1933, 15 U.S.C. § 77a *et seq,* and therefore information about whether any holders of interests in Exeter REIT are not of diverse citizenship with GXO is not publicly available.

As set forth in GXO's Third Party Complaint, this Court has supplemental jurisdiction over GXO's third-party claims against Exeter pursuant to 28 U.S.C. § 1367 because the third-party claims are so related to the claims in the underlying action between Riviana and GXO that they form part of the same case or controversy under Article III of the United States Constitution. Additionally, GXO is authorized by Fed. R. Civ. P. 14(a)(1) to assert its claims against Exeter in Counts I, II, and III because those claims assert that Exeter is liable to GXO for all or part of the claims asserted against GXO by Riviana. *See* ECF 21 at ¶ 5.

In addition to its supplemental jurisdiction pursuant to 28 U.S.C. § 1367, this Court would have original jurisdiction over GXO's third-party claim against Exeter if none of the holders of interests in Exeter REIT is a citizen of Iowa or North Carolina because in that event, there would be complete diversity of citizenship between Exeter and GXO and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. *See* ECF 21 at ¶ 6.

## IV. Statement re Fourth Party Defendant/Cross Defendant JTM Electrical Contractors, Inc.

As of the date the Complaint was filed and currently, Fourth Party Defendant/Cross Defendant JTM Mechanical Contractors, Inc. ("JTM") was and is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business located in East Dundee, Illinois.

As Exeter indicated in its Third Party Complaint, this Court has supplemental jurisdiction over Exeter's claims against JTM pursuant to 28 U.S.C. § 1367 because the third-party claims are so related to the claims in the underlying action between Riviana and GXO that they form part of the same case or controversy under Article III of the United States Constitution. Additionally, Exeter is authorized by Fed. R. Civ. P. 14(a)(1) to assert its claims against JTM because those claims assert that JTM is liable to Exeter for all or part of the claims asserted against Exeter by GXO. *See* ECF 84 at ¶ 10.

## V. Statement re Fourth Party Defendant/Cross Claimant McNelly Services, Inc.

As of the date the Complaint was filed and currently, Fourth Party Defendant/Cross Claimant McNelly Services, Inc. ("McNelly") was and is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Lake Zurich, Illinois.

As Exeter indicated in its Third Party Complaint, this Court has supplemental jurisdiction over Exeter's claims against McNelly pursuant to 28 U.S.C. § 1367 because the third-party claims are so related to the claims in the underlying action between Riviana and GXO that they form part of the same case or controversy under Article III of the United States Constitution. Additionally, Exeter is authorized by Fed. R. Civ. P. 14(a)(1) to assert its claims against McNelly because those claims assert that McNelly is liable to Exeter for all or part of the claims asserted against Exeter by GXO. *See* ECF 84 at ¶ 10.

/s/ *Lawrence G. Glynn*
Lawrence C. Glynn
CARUSO GLYNN, LLC
242-03 Northern Boulevard
Suite 201
Little Neck, New York 11362
(718) 819-8668
(718) 767-2474 Fax
lglynn@carusoglynn.com

*Attorneys for Plaintiff Riviana Foods, Inc.*

/s/ *Lawrence C. Friedman*
Lawrence C. Friedman, IL – 06192019
Allison N. Manger, IL – 6295220
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000
(314) 552-7000 Fax
lfriedman@thompsoncoburn.com
amanger@thompsoncoburn.com

Jeffrey N. Brown – *pro hac vice*
THOMPSON COBURN LLP
10100 Santa Monica Boulevard
Suite 500
Los Angeles, California 90067
(310) 282-9418
(310) 282-2501 Fax
jbrown@thompsoncoburn.com

*Attorneys for Defendant/Third Party Plaintiff*
*GXO Warehouse Company, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2025 a true and correct copy of the foregoing was filed and served via the Court's electronic notification system on all parties of record.

/s/ *Lawrence C. Friedman*