**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RIVIANA FOODS, INC.,<br>*Plaintiff*,<br>v.<br>GXO WAREHOUSE COMPANY, INC.,<br>*Defendant/Third-Party Plaintiff* | Cause No. 1:18-cv-06550<br>Judge Martha M. Pacold<br>Magistrate Judge Jeannice W. Appenteng |

**JOINT STATUS REPORT REGARDING DAMAGES DISCOVERY**

In response to the Court's April 11, 2025 Docket Entry (ECF 298) and June 18, 2025 Docket Entry (ECF 315), Plaintiff Riviana Foods, Inc. ("Riviana") and Defendant/Third-Party Plaintiff GXO Warehouse Company, Inc. f/k/a Jacobson Warehouse Company, Inc. ("GXO") submit this Joint Status Report regarding (1) what additional damages discovery has been completed, (2) what discovery remains, and (3) whether any disputes require the Court's attention.

## I. Additional Damages Discovery That Has Taken Place

Since the parties' previous joint status reports filed on June 9, 2025 and June 12, 2025 (ECF 308 and 312), Liberty Corporate Capital Limited, as sole corporate member of Syndicate 4472 at Lloyd's, 4472 Liberty Managing Agency Limited ("Liberty"), one of Riviana's "interested subrogated underwriters" with claims agreement authority, produced documents on June 19, 2025. This moots the dispute regarding Liberty's failure to produce documents that was addressed in those prior joint status reports and at the June 17, 2025 hearing.

Additionally, following the filing of the June 9, 2025 joint status report (ECF 308), Aon Risk Services Central, Inc. ("Aon"), Riviana's insurance broker, produced documents on June 9, 2025.

## II. Discovery That Remains

Fact witness depositions of Riviana, Liberty, Syn1183 Talbot Underwriting Ltd ("Talbot") (another one of Riviana's underwriters with claims agreement authority), Aon, Barbuss (NA) LLC ("Barbuss") (a company hired by Riviana's insurance broker and its underwriters to pursue recovery of Riviana's losses from the fire that is the subject of this litigation), and EIMC LLC ("EIMC") (the company that was hired by Aon and Riviana to survey the damage from the Fire) will be scheduled now that documents have been produced. As discussed in the June 9, 2025 joint status report (ECF 308), GXO served a notice for Riviana's Rule 30(b)(6) deposition on September 17, 2024, and it served an amended notice on January 28, 2025. It served subpoenas for Rule 30(b)(6) depositions for Aon and EIMC on January 29, 2025 and February 3, 2025, respectively. Mr. Glynn accepted service of GXO's subpoena for Barbuss's Rule 30(b)(6) deposition on January 30, 2025 (having previously informed GXO's counsel on November 13, 2024 that he represented Barbuss). On January 28, 2025, GXO served Rule 30(b)(6) deposition notices for Liberty and Talbot.

During a meet and confer call on March 6, 2025, Mr. Glynn informed GXO's counsel that Liberty and Talbot agreed to make available for deposition one or more witnesses pursuant to Rule 30(b)(6). On March 6, Riviana's counsel emailed to GXO's counsel the following list of the individuals who will be appearing as Rule 30(b)(6) witnesses for the referenced companies:

- Daniel Stenhouse for AON UK
- Rob Hawes for Liberty
- Anthony Simons for Talbot
- Tomás Appleyard for Barbuss
- Esteban Suarez for Barbuss
- Lisa Bedford for Riviana
- Tiina Ruhlandt for EIMC

Aon's counsel sent an email to GXO's counsel on April 1, 2025, stating that Aon will work with GXO to set a mutually agreeable date for Aon's Rule 30(b)(6) deposition. EIMC's counsel, Mark Robinson, agreed in emails dated March 13, 2025 and March 17, 2025, that EIMC would be producing Tiina Ruhlandt for deposition as EIMC's Rule 30(b)(6) witness.

GXO intends to take all the noticed depositions listed above (as well as fact witness depositions and the deposition of any expert witness disclosed by Riviana). For any witness located in the United States, GXO intends to depose the individual in person, and it will make a Zoom link available for any attorney who wishes to attend the deposition remotely. For witnesses located outside of the United States, GXO will either travel to depose the witness in person or will take the deposition remotely, and in either circumstance, a Zoom link will be provided for any attorney who wishes to attend the deposition remotely.

## III. <u>Disputes That Require the Court's Attention</u>

After the June 17, 2025 hearing, the Court stated that "[b]ased on the representations that plaintiff's counsel made in open court and in the joint status report…the Court finds no basis to doubt plaintiff's counsel's affirmation that he conducted a thorough and complete review of the documents" that including the search terms agreed by the parties. ECF 315. Riviana produced 145 documents out of the 18,166 documents that hit on the agreed search terms. *Id.*

GXO does not wish to prolong consideration of this issue or delay discovery in this case because of this issue. GXO does believe it would be helpful to respond to an inquiry the Court made at the hearing about whether there was any "evidence" that some responsive documents might not have been identified by Riviana's search. Tr. (ECF 316) at 16. GXO's counsel responded in general terms, but was not in a position to provide specifics, because prior to submitting the Joint Status Report on June 9 (ECF 308) that discussed this issue, GXO had not yet had an opportunity to review the documents

produced by Aon. GXO has now had the opportunity to review those documents, which include at least five examples of communications to or from a Riviana custodian that hit on the search terms and that Riviana did not produce. *See* Exs. A-E hereto.[1] (A copy of the hit report that includes the search terms is attached hereto as Ex. F.)

Riviana's counsel stated at the June 17 hearing that the documents he chose not to produce did not discuss any issues relevant to the damages issues in this case because they only discussed "scheduling" or other irrelevant issues. Tr. (ECF 316) at 21. The attached examples demonstrate that there were documents that hit on the search terms that discussed relevant issues, and should not have been withheld.

For example, Exhibit A is a January 2019 email thread that begins with an email from Anthony Blackman at Aon to Patti Holland at Aon. The email discusses the Underwriters' subrogation claims, which are one of the issues the District Judge specifically stated was relevant to damages discovery. The email was forwarded by Dawn Spreeman at Aon to Michael Slavin and Drew Johnson at Riviana. Slavin is one of the Riviana document custodians. It was later forwarded to Susie Woodard and Carmen Haworth at Riviana; Haworth is another Riviana custodian. The email thread includes numerous search terms that were agreed to by the parties, including "Patti Holland" W/50 patti.holland@aon.com; ("AON" OR aon.co.uk) W/50 (warehouse OR fire OR XPO OR subrogat* OR blackman OR holland OR monee); Anthony W/2 Blackman; underwriter*; and warehouse W/50 (fire OR damage* OR destroy*). *Compare* Exhibit A with Exhibit F. Yet Riviana did not produce this email thread, which GXO received from Aon.

---

[1] For some of these examples, particularly Exhibits C and E, Riviana did produce some of the emails towards the beginning of the email threads, but it did not produce later relevant emails at the top of the threads that were produced by Aon.

As another example, Exhibit D is an August 2018 email thread between Carmen Haworth at Riviana and Dawn Spreeman and Patti Holland at Aon, and it includes an earlier email from Blackman to Holland that was forwarded to Haworth. As indicated above, Haworth is one of the Riviana document custodians. This email thread discusses the Underwriters' subrogation claims, which, again, is an issue on which the District Judge stated was relevant to damages discovery. Exhibit D includes numerous search terms agreed to by the parties, including "Patti Holland" W/50 patti.holland@aon.com; Barbuss; Anthony W/2 Blackman; underwriter*; ("AON" OR aon.co.uk) W/50 (warehouse OR fire OR XPO OR subrogat* OR blackman OR holland OR monee); and subrogat* W/50 (Aon OR Barbuss OR XPO OR Liberty OR Talbot OR Lloyd* OR underwriter* OR fire OR Monee OR CHIDC). *Compare* Exhibit D with Exhibit F. Yet Riviana did not produce this email thread, which GXO received from Aon.

Based on the above, Mr. Glynn's assertion that he reviewed of all 18,166 documents and produced anything that was relevant is inaccurate. The District Court specifically ordered discovery regarding "this issue about what, if any, amounts has Riviana been paid by its insurers *and what's the significance of that with respect to damages*." ECF 228-2 at 41:19-42:2 (emphasis added). *See also* ECF 221, 230. This Court recognized that the exact role and authority of the Underwriters was at issue when it requested "clarity" about the confusion raised by Riviana's inconsistent statements about the Underwriters' role. ECF 315. Further, Riviana itself recognized the relevance to the damages issues of communications regarding the investigation into the claims against GXO by the Underwriters and their agents when Riviana produced an August 2018 email between Ms. Spreeman and Ms. Haworth, ECF 287 at 3-4; ECF 287-1; ECF 289. Mr. Glynn has stated that he did not withhold any documents from production on privilege or work product grounds. *See* ECF 308 at 6 n.2. The emails discussed above, which were produced by third-party Aon, specifically discuss the Underwriters' subrogation claims and should have been produced by Riviana. Again, GXO is not in a position to know how many other

relevant e-mails were not produced, but based on the number of documents in the hit report (18,166), there likely were more than 145 responsive relevant documents.

The issue here is not the veracity of Riviana's counsel but, rather, the thoroughness of the review and the question raised by the Court as to whether there is evidence that Riviana failed to produce relevant documents. GXO respectfully suggests that its proposal that GXO review the review set is reasonable under the circumstances and not prejudicial to Riviana. But GXO recognizes that the Court may not be inclined to revise its ruling at this time. In that eventuality, GXO may raise the issue again if it learns more information in the forthcoming depositions that indicate that responsive documents were not produced.

* * *

There are no other discovery disputes that require the Court's attention at this time. Per the Court's June 18, 2025 order (ECF 315), the parties are filing an amended jurisdictional statement identifying all parties in interest to this lawsuit, along with their citizenship information.

/s/ *Lawrence C. Glynn*
Lawrence C. Glynn
CARUSO GLYNN, LLC
242-03 Northern Boulevard
Suite 201
Little Neck, New York 11362
(718) 819-8668
(718) 767-2474 Fax
lglynn@carusoglynn.com

*Attorneys for Plaintiff Riviana Foods, Inc.*

/s/ *Lawrence C. Friedman*
Lawrence C. Friedman, IL – 06192019
Allison N. Manger, IL – 6295220
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000
(314) 552-7000 Fax
lfriedman@thompsoncoburn.com
amanger@thompsoncoburn.com

Jeffrey N. Brown – *pro hac vice*
THOMPSON COBURN LLP
10100 Santa Monica Boulevard
Suite 500
Los Angeles, California 90067
(310) 282-9418
(310) 282-2501 Fax
jbrown@thompsoncoburn.com

*Attorneys for Defendant/Third Party Plaintiff GXO Warehouse Company, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2025 a true and correct copy of the foregoing was filed and served via the Court's electronic notification system on all parties of record.

/s/ *Lawrence C. Friedman*