**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RIVIANA FOODS, INC.,<br>*Plaintiff*,<br>v.<br>GXO WAREHOUSE COMPANY, INC.,<br>*Defendant/Third-Party Plaintiff* | Cause No. 1:18-cv-06550<br>Judge Martha M. Pacold<br>Magistrate Judge Jeannice W. Appenteng |

**JOINT STATUS REPORT REGARDING DAMAGES DISCOVERY**

In response to the Court's June 30, 2025 Docket Entry (ECF 319), Plaintiff Riviana Foods, Inc., and Defendant/Third-Party Plaintiff GXO Warehouse Company, Inc. f/k/a Jacobson Warehouse Company, Inc. ("GXO") submit this Joint Status Report regarding (1) the ESI search conducted by Plaintiff Riviana Foods, Inc. ("Riviana") and additional documents that GXO asserts should have been produced, (2) what additional damages discovery has been completed, (3) what discovery remains, and (4) whether any disputes require the Court's attention. Prior counsel for Riviana and its "interested subrogated underwriters" ("Underwriters") withdrew from representing Riviana on July 28, 2025 (*see* ECF 327 and 328) and the undersigned new counsel for Riviana entered an appearance on July 30, 2025 (ECF 329).

## I. Statement by Plaintiff Riviana Foods, Inc.

Undersigned counsel has just recently been retained and entered an appearance in this case. Thus, undersigned counsel has not been involved in the discussions addressed in the Statement by GXO, below. Undersigned counsel understands that Plaintiffs produced relevant documents from the review set pursuant to a review conducted by prior counsel. Undersigned counsel is reviewing the ESI

maintained by Riviana and will produce any additional materials that are relevant to the claims or defenses of any party. Riviana notes that many of the examples referenced in GXO's sections relate to communications involving Michael Bunker. Mr. Bunker unfortunately passed away in 2018 and Riviana had to recreate his emails. Thus, any communications not produced by Riviana involving Mr. Bunker may not have been available to Riviana. Riviana does not agree that the entire review set should be produced to GXO as it contains irrelevant and potentially confidential documents that would be inappropriate for production to GXO.

Plaintiffs, through undersigned counsel, are amenable to the 30-day extension of discovery suggested by counsel for GXO. Undersigned counsel is currently reviewing and preparing the jurisdictional information requested by this Court. Undersigned counsel further reports that both Underwriters and Riviana have authorized the filing and prosecution of this litigation and intend to fully pursue recovery of the significant losses sustained as a result of the fire at issue in this litigation due to GXO's breach of its contractual agreement with Riviana, which has already been established by this Court.

## II. Statement by Defendant/Third-Party Plaintiff GXO Warehouse Company, Inc. f/k/a Jacobson Warehouse Company, Inc.

### A. Riviana's ESI Search

#### 1. GXO's Attempts to Reach Out to Riviana's Counsel Regarding Riviana's Document Production

In the joint status report filed on June 27, 2025, GXO drew the Court's attention to five documents produced by a third party, Aon Risk Services Central, Inc. ("Aon"), Riviana's insurance broker. GXO identified those five documents as documents that Riviana should have produced because they were responsive to GXO's document requests and met the search term parameters agreed to by counsel for Riviana and GXO. ECF 318 at 3-6; ECF 318-1 to ECF 318-6. Yet Riviana did not produce any of those documents. *Id.* This called into question representations by Riviana's counsel at the June

17, 2025 hearing that he had conducted a complete review of 18,166 documents that hit on the search terms agreed to by the parties. *See* Tr. (ECF 316) at 15, 21-22.

On June 30, 2025, the Court acknowledged the five examples provided by GXO and directed the parties to "meet and confer about these documents and update the Court in their next joint status report, which shall be filed by 7/30/2025." ECF 319. After receiving that order, and having received a new document production from one of the Underwriters, Liberty Corporate Capital ("Liberty"), on June 19, 2025, GXO undertook an analysis to determine whether there were other documents that were produced by either third parties or the Underwriters that Riviana should have produced but did not produce. Through that preliminary analysis, GXO found as many as 90 such additional documents. Five of the more pertinent examples are discussed in Section II.D. below.

On July 24, 2025, GXO's counsel sent an e-mail to Riviana's (now former) counsel, Lawrence Glynn, and attached those five documents. GXO's counsel informed Mr. Glynn that they were additional responsive documents that should have hit on the search terms agreed to by the parties and should have been produced by Riviana but were not. GXO's counsel went on to state that these additional examples confirmed that Riviana's review process overlooked and failed to produce responsive documents. He then repeated GXO's prior proposal, outlined in detail in the June 9, 2025 joint status report (ECF 308 at 6-7) and in Section II.D. below, that Riviana make available to GXO via Relativity the review set of 18,166 documents that Riviana identified using the search terms and parameters agreed to by the parties, subject to the confidentiality provisions of the Protective Order in this case (ECF 260). GXO's counsel expressed the position that the proposal would address GXO's concerns about Riviana's document production and would not be prejudicial to Riviana. However, if Riviana would not agree to that proposal, GXO's counsel requested that Mr. Glynn provide his availability to meet and confer by phone.

In the July 24 email, GXO's counsel reminded Mr. Glynn of the Court's July 30 deadline to file the next joint status report. He also reminded Mr. Glynn that Judge Pacold had ordered Riviana to "file on the docket a copy of the table identifying the citizenship of the subrogated underwriters provided to the court at the 7/9/25 hearing" by July 17. *See* ECF 324. GXO pointed out that Riviana had not yet filed the chart and asked for confirmation that Riviana would do so. (The questions raised regarding the citizenship of the Underwriters are discussed in more detail in Section II.A.2. below.)

On that same day, July 24, 2025, Mr. Glynn responded that he was on vacation and would not be returning until August 4. Meanwhile, on July 25, 2025, Judge Pacold entered another order directing Riviana to file the table identifying the citizenship of the Underwriters on the docket by July 31, 2025. ECF 326.

On July 26, 2025, Mr. Glynn filed a motion to withdraw as counsel for Riviana and for the Underwriters. ECF 327. The motion stated that a "fundamental disagreement" had arisen between Mr. Glynn and one or more of the Underwriters and that he had "been instructed to cease any further representation in this matter." *Id.* at 1. He then stated that the law firms of Fields Howell LLP and Walker Wilcox Matousek LLP would be representing the Underwriters and would be entering appearances (although he did not identify which attorneys from those firms would be undertaking the representation). *Id.* He also stated that Riviana would be obtaining new counsel, although he did not identify that counsel or say when they would enter their appearance. *Id.* Judge Pacold granted Mr. Glynn's motion on July 28, 2025, and extended the deadline for Riviana to file the table presented at the July 9 hearing until August 21, 2025. ECF 328.

Mr. Glynn's motion to withdraw calls into question whether he was ever authorized to represent the Underwriters in filing this lawsuit in the first place, especially given that he stated in the joint status report on June 12, 2025 that he was not permitted to communicate with the Underwriters directly but, rather, had to contact them through a third party, Barbuss (NA) LLC ("Barbuss"), which is a company

hired by Riviana's insurance broker and the Underwriters to pursue recovery of losses from the fire that is the subject of this litigation (the "Fire"). ECF 312 at 2 n.4. In fact, it is questionable whether even Riviana wanted Mr. Glynn to file this lawsuit. Documents produced in discovery indicate that individuals at Riviana objected to the lawsuit being filed at all.

**2. Mr. Glynn's Request to Extend Deadlines**

Mr. Glynn's motion to withdraw as counsel has not only left meet and confer efforts up in the air, but it has also called into question the current discovery deadlines. In his motion, Mr. Glynn requested "that any pending deadlines be extended until such time as new counsel has had an opportunity to appear in this action." ECF 327 at 2. While GXO understands the desire for an extension of the discovery deadlines to allow for new attorneys to become acclimated to the case, GXO opposes any lengthy extension.

It has now been over a year since the District Court ordered discovery regarding "this issue about what, if any, amounts has Riviana been paid by its insurers and what's the significance of that with respect to damages." ECF 228-2 at 41:19-42:2. *See also* ECF 221, 230. It has been 10 months since GXO served its document requests on Riviana in September 2024. Riviana initially balked at producing any documents, then produced a limited number of documents from custodians chosen by Riviana with no input from GXO and no agreement on search terms. GXO engaged in months of negotiations with Riviana regarding its document production that ultimately led to this Court conducting a hearing on January 21, 2025. *See* ECF 282. The Court entered an order after that hearing finding that Riviana's "limited set of search terms" was "insufficient to discover relevant damages information within plaintiff's possession, custody, and control," and ordered the parties to meet and confer regarding search terms and custodians. *Id.*

GXO then attempted to negotiate search terms with Riviana, but Riviana responded by objecting to any document production unless costs of production were shifted to GXO. *See* ECF 285

at 1-5, 8-9. The Court directed that the parties file a joint status report on the subject by February 17, 2025, ECF 286, and after the joint status report was filed (ECF 287), the Court ruled on March 3, 2025 that there would be no cost shifting at this time. ECF 289.

Having failed in its attempt to shift the costs of discovery to GXO, Riviana then balked at providing a hit report, which was necessary for the parties to negotiate search terms in any informative manner. Riviana claimed that the process of providing the hit report would be too expensive. Finally, after several weeks of discussions between GXO's and Riviana's counsel, Riviana produced a hit report on April 10, 2025. The parties then engaged in several more weeks of negotiations, culminating in an agreement on search terms and parameters on May 13, 2025 that identified 18,166 potentially responsive documents.

Nine days after reaching that agreement, on May 22, 2025, Riviana produced 145 documents to GXO, representing that these were the only responsive documents among the 18,166 documents identified by the search terms agreed to by the parties. *See* ECF 308 at 5. GXO questioned whether Riviana could have conducted a reasonable review of all 18,166 documents in such a short time frame, particularly because Mr. Glynn represented that he personally reviewed each of the 18,166 documents between May 9 and May 22, spending a total of 59 hours on the review (averaging over 300 documents per hour) and did not use any electronic discovery aids, such as deduplication, e-mail threading, or active learning. ECF 308 at 5-6. The Court held a hearing on this issue on June 17, 2025, and indicated that, without any examples of documents Riviana should have produced but failed to do so, the Court did not have a basis to question Mr. Glynn's representation that he had conducted a complete review. Tr. (ECF 316) at 16. *See also* ECF 315.

As discussed above, after that hearing, GXO filed its five example documents, ECF 318 & ECF 318-1 to 318-5, and the Court directed that the parties meet and confer on the issue. ECF 319. GXO's

attempt to do so was met by the statement from Mr. Glynn that he was on vacation until August 4, and then Mr. Glynn filed the motion to withdraw as counsel (ECF 327).

Given the lengthy delays in discovery caused by Riviana's intransigence toward document production, GXO has been prejudiced in its ability to conduct discovery. There have been several extensions of the discovery deadlines already to account for Riviana's failure to produce documents. *See* ECF 282, 298, 310. GXO also has had to postpone deposing fact witnesses in this case pending a complete production of documents.

Additionally, GXO was prejudiced by Riviana's failure to disclose in its initial damages disclosures that it had been paid by the Underwriters, a matter that did not come to light until years later, at the hearing on the parties' motions for summary judgment on July 25, 2024. *See* ECF 317 at 6-7. Riviana had not previously provided the names of the Underwriters or identified their interests in this litigation. *Id.* at 4-6. Riviana did not disclose that information until September 2024. *Id.* at 7.

More recently, the issue of whether the Underwriters are parties to this litigation (a matter on which Riviana has changed position) was addressed by the Court in its June 18, 2025 minute entry. ECF 315. The Court ordered that the parties file an amended jurisdictional statement to provide "clarity" about the confusion raised by Riviana's inconsistent statements about the Underwriters' role. *Id.* Riviana and GXO submitted an Amended Joint Jurisdictional Statement on June 27, 2025, in which Riviana listed the Underwriters and asserted that they were "interested parties only." ECF 317 at 2-3. GXO recounted that, despite representing in 2020 that the Underwriters were not parties to the case (*see* ECF 73), Riviana's counsel had later made repeated representations that the Underwriters were, in fact, parties to this action. *See* ECF 317 at 5-8. GXO raised the question of whether the Underwriters (which are U.K.-based syndicates) had shown that they were diverse to GXO and whether the District Court has subject matter jurisdiction over this case. *Id.* at 9-11.

On July 3, 2025, Judge Pacold directed the parties to address these issues at a hearing on July 9, 2025. ECF 321. During the hearing, she indicated that she would allow Riviana to file an amended complaint that should plead facts regarding the interests of the Underwriters. Tr. (ECF 325) at 42-46. After that hearing, she ordered Plaintiff to file an amended complaint by August 8, 2025. ECF 323. She also ordered that, by July 17, 2025, Plaintiff should file on the docket a copy of the table identifying the citizenship of the Underwriters. ECF 324. (As discussed above, Riviana missed the deadline for filing the table and has now been ordered to file it by August 21. *See* ECF 328.)

The confusion regarding the Underwriters, whether they are parties, and whether Mr. Glynn had authority to represent the Underwriters has delayed and prejudiced GXO's ability to conduct discovery in this matter. This is coupled with the prejudice caused by Riviana's delays in producing documents (discussed above). As a consequence, GXO requests that any extension of discovery deadlines to accommodate the change in counsel for Riviana and the Underwriters extend the deadlines by no more than thirty days. That is a reasonable amount of time for new attorneys to familiarize themselves with the case while avoiding any further prejudicial delays in the damages discovery that the Court ordered a year ago.

In making this request, GXO reserves all rights to seek further relief due to Riviana's discovery delays and the other issues related to whether this lawsuit was authorized. GXO further continues to reserve all rights to challenge whether the District Court has subject matter diversity jurisdiction, pending Plaintiff providing further information regarding the Underwriters in an amended complaint, as ordered by Judge Pacold.

**B. <u>Additional Damages Discovery That Has Taken Place</u>**

No additional discovery has taken place since the June 27, 2025 joint status report (ECF 318). As discussed above, pursuant to the Court's June 30, 2025 order (ECF 319), GXO's counsel attempted to confer with Riviana's counsel via email on July 24, 2025 regarding the shortcomings in Riviana's

document production. In that same email, GXO's counsel addressed the need to start deposing fact witnesses and requested available dates for the depositions of Rule 30(b)(6) witnesses for Riviana, as well as for Liberty, Barbuss and Talbot Underwriting Ltd. ("Talbot"), another one of the Underwriters. (Mr. Glynn had previously stated that he represented those entities.) GXO also asked whether Mr. Glynn would be coordinating dates for the Rule 30(b)(6) witnesses for Aon and EIMC LLC ("EIMC"), the company hired by Aon and Riviana to survey the damage from the Fire (as he had done in the past), or whether GXO's counsel should reach out directly to counsel for those entities. Additionally, GXO requested clarification regarding a "Supplemental Expert Disclosure Pursuant to Rule 26(a)(2)" that Riviana served on June 23, 2025.

### C. <u>Discovery That Remains</u>

Fact witness depositions of Riviana, Liberty, Talbot, Aon, Barbuss, and EIMC need to be scheduled once Riviana's document production is final. As discussed in the June 9, 2025 joint status report (ECF 308 at 3-4) and the June 27, 2025 joint status report (ECF 318 at 2-3), GXO served a notice for Riviana's Rule 30(b)(6) deposition on September 17, 2024, and it served an amended notice on January 28, 2025. It served subpoenas for Rule 30(b)(6) depositions for Aon and EIMC on January 29, 2025 and February 3, 2025, respectively. Mr. Glynn accepted service of GXO's subpoena for Barbuss's Rule 30(b)(6) deposition on January 30, 2025 (having previously informed GXO's counsel on November 13, 2024 that he represented Barbuss). On January 28, 2025, GXO served Rule 30(b)(6) deposition notices for Liberty and Talbot.

During a meet and confer call on March 6, 2025, Mr. Glynn informed GXO's counsel that Liberty and Talbot agreed to make available for deposition one or more witnesses pursuant to Rule 30(b)(6). On March 6, Riviana's counsel emailed to GXO's counsel the following list of the individuals who will be appearing as Rule 30(b)(6) witnesses for the referenced companies:

- Daniel Stenhouse for AON UK

- Rob Hawes for Liberty
- Anthony Simons for Talbot
- Tomás Appleyard for Barbuss
- Esteban Suarez for Barbuss
- Lisa Bedford for Riviana
- Tiina Ruhlandt for EIMC

Aon's counsel sent an email to GXO's counsel on April 1, 2025, stating that Aon will work with GXO to set a mutually agreeable date for Aon's Rule 30(b)(6) deposition. EIMC's counsel, Mark Robinson, agreed in emails dated March 13, 2025 and March 17, 2025, that EIMC would be producing Tiina Ruhlandt for deposition as EIMC's Rule 30(b)(6) witness.

GXO intends to take all the noticed depositions listed above (as well as fact witness depositions and the deposition of any expert witness disclosed by Riviana). For any witness located in the United States, GXO intends to depose the individual in person, and it will make a Zoom link available for any attorney who wishes to attend the deposition remotely. For witnesses located outside of the United States, GXO will either travel to depose the witness in person or will take the deposition remotely, and in either circumstance, a Zoom link will be provided for any attorney who wishes to attend the deposition remotely. When new counsel enters appearances for Riviana and the Underwriters, GXO will coordinate with them in setting dates for the depositions.

**D. <u>Disputes That Require the Court's Attention</u>**

As discussed in Section II.A.1 above, GXO has to date found as many as 90 documents produced to GXO by the Underwriters or by third parties that Riviana should have, but did not, produce. Further analysis may identify additional documents, but for purposes of supporting its request that it analyze the review set identified by Riviana, GXO is submitting five additional documents in

addition to the five GXO identified in the June 27 joint status report (ECF 318). See Exhibits G-K hereto.[1] These examples support the conclusion that relevant documents were overlooked in Riviana's review, either because there was not sufficient time devoted to the review, or because Rivian's view of what was relevant was too restrictive and contrary to the scope of discovery ordered by the Court. Each of these documents would have hit on the search terms agreed to by the parties (*see* ECF 318-6) but were not produced by Riviana.

The first document (Exhibit G, Bates No. AONRIVIANA-0000810) was produced to GXO by Aon. It is an email thread containing several emails. The top email, dated August 7, 2017, is an email from Patti Holland at Aon to Mike Bunker (a Riviana custodian) asking whether Mr. Bunker had purchase orders or invoices to support Riviana's valuation of the inventory it alleges it lost in the Fire. *Id.* While Riviana produced earlier emails on the thread, it did not produce that top email, which relates directly to whether Riviana had documentary support for a key element of its alleged damages (*i.e.,* the value of its lost inventory).

The second document (Exhibit H, Bates No. AONRIVIANA-0000540) was also produced by Aon and also contains several emails. The top email is from Dawn Spreeman at Aon to Ms. Holland. *Id.* That email, in turn, forwards an email dated July 14, 2017 from Carmen Stacy (a Riviana custodian) to Ms. Spreeman regarding a site visit at the warehouse where the Fire occurred. *Id.* The email addresses who would cover Riviana's losses at the warehouse. *Id.* It therefore relates to Riviana's damages and should have been produced by Riviana (but was not).

---

[1] GXO attached five previous examples of documents Riviana should have produced, labeled Exhibits A through E, to the June 27, 2025 status report, along with a hit report containing the search terms, which was labeled as Exhibit F. *See* ECF 318 and ECF 318-1 through 318-6. For the sake of clarity and to avoid repetition of exhibit numbers, GXO has labeled these five additional documents as Exhibit G through K.

The third document (Exhibit I, Bates-labeled by GXO as "Produced by Talbot 000001"[2]) is another thread containing multiple emails. This document was produced to GXO by Talbot but not by Riviana. The bottom email is an email from Mr. Bunker to Lauren DeKoker of EIMC and Ms. Holland in which Mr. Bunker sets forth the reasoning behind Riviana's calculation of the value of the inventory allegedly lost in the Fire. *Id.* This email directly addresses Riviana's damages and should have been produced by Riviana.

The fourth document (Exhibit J, Bates-labeled AONRIVIANA-0001961) is an email thread produced by Aon. While earlier emails on this thread were produced by Riviana, it did not produce the top three emails on the thread, which included Mr. Bunker and Michael Slavin, both of whom are Riviana custodians. Those top three emails discuss the role of Barbuss in this case and the subrogation interests of the Underwriters, one of the matters on which Judge Pacold directed discovery. Riviana should have produced those emails.

The fifth document (Exhibit K, Bates-labeled by GXO as "Produced by EIMC 001082") is another email thread, this time produced by EIMC. The top email, which Riviana did not produce, is an email dated October 5, 2017 from Anthony Blackman at Aon to Mr. Bunker and Ms. Holland. *Id.* In that email, Mr. Blackman questioned specific elements of the damages claimed by Riviana. *Id.* The email thus relates directly to damages and should have been produced by Riviana.

The fact that GXO has identified additional relevant and responsive documents that Riviana should have produced but failed to produce demonstrates that Riviana's review of the 18,166 documents identified by the ESI search was inadequate. Riviana has not explained why it did not

---

[2] Talbot, Liberty, and EIMC produced documents to GXO without Bates numbers. GXO added its own Bates numbers to the documents for the sake of clarity.

produce these documents.[3] GXO therefore requests that, to prevent further discovery delays, the Court order that Riviana make available to GXO via Relativity the review set of 18,166 documents that Riviana identified using the search terms and parameters agreed to by the parties, subject to the confidentiality provisions of the Protective Order in this case (ECF 260). GXO would review the review set and identify which documents it believes were responsive. GXO would provide those documents to Riviana, and would not retain the rest of the review set. If Riviana believed that any of the documents identified by GXO were privileged and/or work product, Riviana would have the right pursuant to Rule 26(b)(5)(B) to seek to claw back the document, and GXO could oppose the clawback if GXO believed the document was not privileged. GXO would then keep only those non-privileged documents it determined were responsive during its review. GXO believes that this proposal is fair to the parties and would allow GXO to finally complete document discovery without further delay and move on to depositions.

/s/ *Lawrence C. Friedman*
Lawrence C. Friedman, IL – 06192019
Allison N. Manger, IL – 6295220
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000
(314) 552-7000 Fax
lfriedman@thompsoncoburn.com
amanger@thompsoncoburn.com

Jeffrey N. Brown – *pro hac vice*
THOMPSON COBURN LLP
10100 Santa Monica Boulevard
Suite 500

[3] In Section I above, Riviana's new counsel states that some of the omissions may be attributed to the fact that one of the Riviana custodians, Michael Bunker, was deceased and his files had to be reconstructed. This issue does not account for all of the deficiencies because, as some of the examples submitted by GXO illustrate, the documents Riviana did not produce included e-mails on which other Riviana custodians were included, and therefore should have been produced. *See* Exhibit A (ECF 318-1), Exhibit B (ECF 318-2), Exhibit C (ECF 318-3), Exhibit D (ECF 318-4), Exhibit E (ECF 318-5), Exhibit H (attached hereto), and Exhibit J (attached hereto).

Los Angeles, California 90067
(310) 282-9418
(310) 282-2501 Fax
jbrown@thompsoncoburn.com

*Attorneys for Defendant/Third Party Plaintiff GXO Warehouse Company, Inc.*

*/s/ Christopher J. Shannon*
Christopher J. Shannon (6323518)
Walker Wilcox Matousek LLP
One North Franklin St., Suite 3200
Chicago, IL 60606
(312) 244-6700
cshannon@walkerwilcox.com

*Attorneys for Plaintiff Riviana Foods, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2025 a true and correct copy of the foregoing was filed and served via the Court's electronic notification system on all parties of record.

/s/ *Lawrence C. Friedman*